## City of Louisville v. Louisville Home Telephone Co.

(Decided June 21, 1912.)

Appeal from Jefferson Circuit Court
(Chancery Branch, Second Division).

1. Telephones—Ordinance Prohibiting Party Lines.—Appellee having acquired its franchise under an ordinance which prohibits its use of party lines in the city of Louisville cannot excuse its use of such party lines on the ground that they are not of the character which the ordinance intended to prohibit, or that no present or prospective injury has resulted to its subscribers therefrom.

2.  Telephones—Ordinance Prohibiting Party Lines—Contract With City.—The provision in the ordinance prohibiting appellee's use of the party line service in its telephone system, was a condition of the contract under which its franchise was acquired. The condition is, therefore, a part of the contract with the city, and if the city insists upon its compliance with that condition, appellee can be compelled by the court to do so, even if the result should be the loss to it of the profits it had been accustomed to realize from its business.

3.  Court of Equity—May Compel Public Service Corporation to Abide by Terms of Contract—Though No Injury Result From Violation of Franchise.—When the remedy at law is, as in this case, manifestly inadequate, it is a well recognized rule that a court of equity may. at the suit of the State or municipality granting a franchise by injunction compel a recalcitrant public service corporation to which it was granted to abide by its terms, although no actual injury result to the State or municipality from the corporation's violation of the franchise. This is so because, in such case, the corporation's breach of the contract, especially if it arises out of the doing of an act which the contract declares shall not be done, will presumptively result in the oppression of the citizens.

CLAYTON B. BLAKEY for appellant.

HELM BRUCE, BRUCE & BULLITT for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Reversing.

This is an appeal from a judgment of the Jefferson Circuit Court, Chancery Branch, Second Division, dismissing an action in equity brought by the city of Louisville to enjoin the Louisville Home Telephone Company from using in its telephone system in the city, what are known as party lines.

The appellee, Louisville Home Telephone Company, is operating its exchange and lines in Louisville under a franchise which was acquired by purchase of the city in the year 1900, under an ordinance authorizing its sale according to the constitutional method.

By section nine of the ordinance it was provided, in part:

"There shall be no party lines constructed or maintained by the owner or company operating such telephone system or plant    *    *    *."

It is alleged in the petition and, in effect, admitted by the answer, that appellee has since the beginning of 1909 operated its telephone system in violation of the

above provision of section nine of the ordinance, by maintaining party lines in the City of Louisville.

It is however averred in the answer:

First: That in so doing it only violated the letter of the ordinance, and that no one is being injured by its operation of party lines.

Second: That its party lines are not of the character which section nine was intended to prohibit.

Third: That the injunction asked by the appellant city was properly refused by the circuit court, because of its failure to prosecute the action with due diligence; and for the further reason, that no present or prospective injury was shown to have resulted to the city or its inhabitants from appellee's operation of the party lines complained of.

Prior to 1900, the Cumberland Telephone & Telegraph Company owned the only telephone system in operation in the city of Louisville. Its service was regarded by the city as unsatisfactory, as it could not provide telephones to all who desired them; and besides, used the party line system by which it would sometimes put as many as ten of its patrons on a line; the effect of which was that whenever the signal bell rang for one of the subscribers on a party line, it rang for all the subscribers on that line. This system required the company, if it had a number of subscribers on the line, to divide them so that a call for half of the subscribers on the line would be by short rings and for the other half by long rings; each subscriber having his number. To carry the illustration further: If there were ten persons on the line they would be so classified as that Numbers 1-2-3-4-5 would belong to one class and numbers 6-7-8-9-10 to the other class; and that the ring for No. 2 would be by two short rings and for No. 7 by two long rings. Also the call for No. 5 would be by five short rings and for No. 10 by five long rings.

Under such a system the only way a subscriber could tell whether the call was for him was to count the number of rings of the bell; and not only had he to count the number of rings, but also to note the length of the rings. It can readily be seen that such a system would necessarily cause an almost constant jingling of bells and consequent confusion of mind among the patrons of the telephone company. In view of this condition of affairs it is easy to understand why the General Council of the city of Louisville, in passing the ordinance of 1900 with

respect to the sale of the new telephone franchise, inserted therein the provision found in section nine, prohibiting the use, by the purchaser of such franchise, of the party line system.

Following the purchase of its franchise in 1900, appellee constructed and put in operation in the city of Louisville, its telephone exchange and lines; in doing which it apparently complied with all the requirements of the ordinance under which its franchise was acquired. Indeed, it seems to have operated its telephone system from the time of its construction down to 1909, without the use of the party line service. It is claimed for it that there was in 1909 such a public demand for its service that it was unable with its single line system, then in use, to supply any considerable part of the increased number of persons desiring its telephones; in other words, that its physical capacity was unequal to the task of supplying the increased demand for telephones made upon it; and that as it was then carrying a large bonded indebtedness it was not financially able, nor did it have sufficient credit, to incur the expense of increasing its poles and lines to such an extent as would have enabled it by the single line system to supply such demand. Under these conditions appellee attempted in 1909 to install the party line system with the aid of an apparatus known as the Harmonic Selective Equipment, by the operation of which, it is claimed, with as many as four persons on a line, the operator can select any of the four whom he desires to call, and may call him  without calling the others on the line. In its use of the Harmonic Selective Equipment and its attendant party line system, appellee, however, confined the number of persons on a line to two and by this means doubled the capacity of its system, as a whole; because it was thereby enabled to serve two persons on a line where before it could serve but one.

Appellee's contention that no one is being injured by the party line service operated by it, is based on the theory that as the rental of the party line telephone is less than that of the single line telephone, many persons, use the former who would be unable to use the latter and but for the party line telephone would not use a telephone at all. If there were no ordinance to control or the case could be decided on purely equitable principles, this argument would have more weight, but the preference of the subscriber for the party line cannot condone the appellee's violation of the ordinance, in using the party

line system it prohibits. Section nine of the ordinance fixes the rates which appellee may charge and those rates it is entitled to charge for the service it renders, irrespective of whether that service is single line or party line service. As well argued by counsel for appellant, if the judgment of the circuit court should be affirmed there will then be nothing to prohibit appellee from converting all its lines into party lines, charging the rates named in the ordinance therefor, and forcing all its subscribers to take party line service. Moreover, if we should uphold the right of the appellee to furnish such party line service, there would then be nothing to prevent it from putting ten subscribers on a line instead of two.

Appellees' further contention, that the party line service inaugurated by it is not the character of party line service section nine of the ordinance intended to prohibit, cannot prevail, as it cannot justify its violation of the contract with the city, expressed in the ordinance under which its franchise was obtained, by showing that the ordinance has, or was intended to convey, a meaning which its language does not import, or by showing that its manner of operating the party line service relieves it of the objectionable features attending the operation of the old party line service. In other words, it cannot be left to appellee to alter at will the terms of the contract under which it obtained its franchise, and, at the same time, leave it to it to determine whether its act in so doing is for the benefit or to the injury of the public.

We are not convinced by the record before us that the use of the Harmonic Selective Equipment, in connection with the operation of the party lines by appellee, does, in fact, relieve same of all the objectionable features attending the use of the old party line service; it does confine signaling to the ringing of the bell of the subscriber called on the party line, but, according to the testimony of appellees' two witnesses, Coleman and Pogue, it does not prevent each subscriber on such line from hearing what may be said to or by the other subscribers on the same line, which was one of the evils of the old party line service.

It is manifest that the provision prohibiting the use of party lines was a condition of the contract by which appellee acquired its franchise, and that the condition was one which the city had the right to impose. In Joyce on Franchises it is said:

"If requirements are exacted or duties imposed by ordinance, which if enforced would impair the obligations of a gas and electric light company's contract, nevertheless the company is not thereby relieved from offering to do those things which it is lawfully bound to do.   *   *   *   And where a statute authorizes a city to grant by resolution or ordinance, under such conditions as the common council may deem proper, to any person or corporation, the right to erect and maintain in the streets, alleys and other public places of such city, poles, wires and other necessary appliances, for the purpose of supplying electric or other light, the discretion of the common council is not confined to the mere restriction of methods of use, but extends to the restriction of time, and the statutory authority conferred carried with it an unreserved discretion and the right to impose any terms on the grant not forbidden by law, and a statutory authority to revoke such license may be given to such city and it may be exercised by it."

Again in section 342 it is said:

"So it is declared that it has never been doubted that the legislative authority, in making a grant of a corporate franchise, can prescribe such terms and such conditions for its acceptance and for its enjoyment as it shall deem best, not inconsistent with constitutional limitations.   The manner of enjoying the franchise, its life, its scope, are all subjects of legislative control."

In section 348 it is further said:

"If a city grant a franchise to a corporation for a term authorized by law, and the conditions thereof are accepted, the same constitutes a contract between the parties, the violation of which is the subject of litigation in an ordinary proceeding."   Chicago General Ry. Co. v. City of Chicago, 66 L. R. A., 959.

In the case of Moberly v. Richmond Telephone Co., 126 Ky., 369, we said:

"Under the present Constitution a city may sell such franchise at public sale to the highest and best bidder for a term of not exceeding twenty years, though they are not exclusive.   Without such sales cities may not grant such franchises.   (Section 164, Constitution.)   The city may annex any lawful condition to the exercise of the franchise, which becomes a part of the contract under which it is thenceforth used."

In the instant case the language of the ordinance, under which appellee acquired its franchise, expressly

declares in plain unambiguous terms, "there shall be no party lines constructed or maintained by the owner or company operating such telephone system or plant."

It is a well known rule of construction that so long as the language of the statute or ordinance is plain or unambiguous it is not subject to interpretation, nor open to construction, but must be accepted and enforced as it is written.

As said by Judge Story in Gardner v. Culter, 2 Pet., 58:

"What the legislative intent was can be derived only from the words they have used. We cannot speculate beyond the reasonable import of those words. The spirit of the act must be extracted from the words of the act, and not from conjectures aliunde." Duncan v. Combs, 131 Ky., 339; Green v. Commonwealth, 15 R., 300; Commonwealth v. Glover, 132 Ky., 588; Lewis' Sutherland Statutory Construction, section 364; Swarts v. Siegel, 117 Federal, 13; 28 Cyc., 388; Dillon's Municipal Corporations, volume 2, section 646.

In view of the language and meaning of the ordinance in question it is not material whether the cost to the appellee of maintaining a direct or single line service is or not greater than that of maintaining a party line service, or whether it is financially unable to maintain a direct or single line service for each of its patrons. It is sufficient that the condition contained in the ordinance, under which it acquired its franchise, prohibits it from constructing or maintaining party lines in the conduct of its business. The condition is, therefore, a part of its contract with the city and if the city insists upon its compliance with that condition, appellee can be compelled by the courts to do so, even if the result should be the loss to it of the profits it has been accustomed to realize from its business.

Appellee's third and final contention that the injunction was properly refused by the circuit court, first, because of appellant's delay in prosecuting the action; and, second, because no substantial or prospective injury was shown, finds no support from the record. The suit was pending about a year. We do not mean to say that it could not have been sooner tried, but whether the trial was delayed for political reasons, as claimed by appellee's counsel, or other improper cause, does not appear from the record; at any rate the delay was not so

exceptional as to authorize us to impute bad faith to those who represented appellant in its prepartion and trial.  The case does not appear to be one in which appellee, at the city's instance or with its consent, has expended money for its benefit, or performed some act for its advantage, which it has accepted or in good faith should accept; therefore there is no ground of estoppel apparent.  So far as we can see the matters of defense relied on by the appellee are mere supposed equities, which cannot excuse its use of the party lines in the telephone service, in the face of the express prohibition of the ordinance under which its right to use the city's streets for its business, was acquired.

We think injunction the proper remedy in this case. The injury resulting from appellee's violation of the ordinance of the city, was an injury to the muncipality and its inhabitants of a permanent, continuing and irreparable nature; and also such in character as is not susceptible of accurate pecuniary estimation.  Moreover, where the remedy at law is, as here, manifestly inadequate, it is a well recognized rule that a court of equity may, at the suit of the state or municipality granting a franchise, by injunction compel a recalcitrant public service corporation to which it was granted to abide by its terms, although no actual injury result to the state or municipality from the corporation's violation of the franchise.  This is so, because in such case the corporation's breach of the contract, especially if it arises out of the doing of an act which the contract declares shall not be done, will presumptively result in the oppression of the citizens.  Cumb. Tel. & Tel. Co. v. City of Hickman, 129 Ky., 220; Greenup Co. v. Maysville & B. S. R. R. Co., 88 Ky., 659; Duncan, Trustee v. Central Passenger Ry. Co., 85 Ky., 532; Hazelip v. Lindsay, 93 Ky., 17; Hilliard v. Fetter, 127 Ky., 95.

A most excellent statement of the law on this subject is contained in Pomeroy's Eq. Rem., Vol. 5, section 263, wherein it is said:

"In determining whether an injunction will be issued to protect any right of property, to enforce any obligation, or to prevent any wrong, there is one fundamental principle of the utmost importance which furnishes the answer to any questions, the solution to any difficulties, that may arise.  This principle is both affirmative and negative, and the affirmative side of it should never be

lost sight of, any more than the negative side. The general principle may be stated as follows: 'Whenever a right exists or is created, by contract, by the ownership of property or otherwise, cognizable in law, a violation of that right will be prohibited, unless there are other considerations of policy or expediency which forbid a resort to this prohibitive remedy."

Being of the opinion that the circuit court erred in refusing the injunction asked by appellant, the judgment is reversed and the cause remanded with directions to set it aside, that another may be entered, granting the injunction as prayed in the petition.

Whole court, except Judge Lassing, sitting.