## City of Bowling Green et al. v. Davis

June 6, 1950.

A. J. Bratcher, Special Judge.

Charles R. Bell and Maurice D. Burton for appellants.

Marshall Funk for appellee.

VAN SANT, COMMISSIONER—Affirming.

Appelee, John Harlin Davis, filed a petition in equity asking for a declaration of his rights under an ordinance of the City of Bowling Green and a franchise for the collection of garbage in that city granted to him pursuant to the ordinance. Appellants, the City of Bowling Green, the Mayor, and the individual members of the Common Council, appeal from a judgment of the Warren Circuit Court holding that the ordinance of September 1, 1947, granting and authorizing the sale of the franchise and the resolution of November 25, 1947, awarding appellee the franchise, constitute a binding contract between appellee and the City of Bowling Green; that a resolution of April 19, 1948, purporting to cancel the franchise awarded to appellee, is a violation of the provision of the State and Federal constitutions forbidding impairment of the obligations of a contract,

Const. Ky. sec. 19; U. S. Const. art. 1, sec. 10; mandatorily requiring appellee to enact an ordinance fixing reasonable and proper rates to be charged by appellant under the franchise, and additionally to enact an ordinance regulating the activities and conduct of the public, appellee, his customers, and his actual or potential competitors, and to approve a performance bond tendered by appellee, all of which was in accordance with the prayer of the petition.

Appellants rely on four grounds for reversal: (1) The City of Bowling Green, a municipality of the third class, was without authority to grant a franchise for the collection of garbage; (2) the franchise in question was void because its sale was not duly advertised; (3) the franchise was granted without any adequate compilation of data before its sale as a basis for fixing duties upon its owner and rates to be paid by its patrons; and, (4) the Common Council acted discreetly in revoking the award of the franchise before the program was inaugurated and expenditures made by appellee.

KRS 96.060 gives express authority to cities of the third class to grant franchises to operate certain specific public utilities for a term not exceeding twenty years. This authorization is silent in respect to a franchise for garbage collection. KRS 85.120 in so far as pertinent provides:

"The common council, subject to the limitations imposed by the Constitution and statutes, may: * * *

"(6) By ordinance, make police regulations to secure and protect the general health, comfort, convenience, morals and safety of the public;

"(7) Enact ordinances to carry out the full intent and meaning of the statutes relating to cities of the third class, and to accomplish the object of the incorporation of those cities."

Undoubtedly, KRS 85.120, supra, authorizes the city to provide for the protection of the general health of residents of the territory over which it has jurisdiction. One could not doubt the right of the city to collect garbage and defray the cost of such collection out of the general fund of the city. Neither could one doubt that the city would have the right to contract with another to function in this respect and pay such person out of

the general fund of the city. We likewise are of the opinion that the provisions of KRS 85.120 (6) and (7), supra, authorize the city to perform this function, which we conceive to be a duty, by other means, which, in its discretion, the better will accomplish the purpose for which the authority has been granted to it. In McQuillin, Municipal Corporations, 3rd Edition, Volume 7, Section 24,251, page 90, it is said: "Generally a municipal corporation can contract with one or more persons or corporations for the collection and removal of waste matters, garbage, filth, trash, refuse, carcasses and offal. It may grant an exclusive privilege to a contractor or licensee to make such collection and removal for a specified period. Removal of substances of this character must proceed quickly and without abatement, with as little inconvenience as possible to inhabitants; and experience in such removal, which contributes to its orderliness and efficiency, may under some circumstances best be obtained through a contract. In any event, it is within municipal legislative competency to decide to have the service performed under a contract. Accordingly, an exclusive contract for the removal of these substances constitutes a proper exercise of the police power. The common-law doctrine that monopolies are odious and therefore illegal refers to franchises and agreements in restraint of trade, and has no application to police regulations designed to promote the health or morality of the public, and, hence, it has no application to an exclusive contract for the removal of waste products such as garbage, refuse, decaying carcasses and similar waste matters, at least where they are a nuisance, offensive or likely to be dangerous to the public health. An ordinance may forbid the collection of garbage by unlicensed persons, revoke existing licenses and give the right to the city garbage contractor. The contract may be made to run for many years, subject, of course, to constitutional, statutory and charter limitations. A charter amendment forbiding monopoly for hauling garbage becomes effective only after expiration of an existing exclusive contract."

Some jurisdictions have taken a contrary view in respect to the right of the city to impose on the property owner the requirement of using the service provided by contract with the city; but these views have been taken in the light of constitutional and statutory provisions and

factual circumstances not common with those in the instant case.

Our Constitution does not place any restraint on the Legislature in respect to granting of franchises for garbage disposal; and KRS 85.120 (6) and (7) authorize legislative bodies of cities of the third class to exercise their discretion in caring for the health of their inhabitants, even to the letting of a franchise for garbage collection and disposal. Were we in doubt concerning the right of cities of the third class in the respect mentioned, we would be persuaded to our present view by weighing the provisions of KRS 94.282:

"(1) Any city may acquire, maintain and operate a garbage disposal system, together with extensions and necessary appurtenances thereto within or without the limits of the city.

"(2) If any such garbage disposal system is acquired from a company having a franchise, such system may be acquired as an electric plant may be acquired under the provisions of KRS 96.550 to 96.900, except as otherwise provided in KRS 94.283 to 94.287. (1946, c. 69, Section 2)"

The foregoing was enacted by the Legislature at its general session in 1946 and was in effect at the time of the creation of the franchise under consideration. It will be observed that, in passing this Act, the Legislature construed the Constitution and the then existing statutes as authorizing cities of the third class to grant franchises for garbage disposal, which necessarily includes the collection of materials for that purpose.

The second contention is based on the fact that the franchise was advertised only for a period of six days before its sale. It is argued that such period of time was insufficient to insure competitive or intelligent bidding, therefore, the sale was conducted without "due advertisement" as required by section 164 of the Constitution. In Town of Hodgenville v. Gainesboro Telephone Company, Inc., 237 Ky. 419, 35 S.W.2d 888, it was held that advertising for ten days was sufficient compliance with the Constitution respecting the sale of a franchise for a telephone system. In that opinion, it is said that where there is no statutory or constitutional provision defining "due advertisement" and where no

other direction in respect to advertising has been made, the legislative body creating the franchise has the discretion to fix the number of days the sale shall be advertised. We construe this language to mean that the discretion to be exercised by the council shall be a reasonable one, and under that construction, we adhere to this decision. The bidders for the franchise in that case were required to make exhaustive surveys and calculations in preparation for submitting their bids, whereas, in the instant case, the preliminary surveys, estimates, and calculations are relatively simple. Under the circumstances, we cannot say that the Chancellor erred in his determination that the council did not abuse its discretion in respect to the number of days the sale was advertised.

The circumstances complained of in the third ground are matters which, in the ordinance creating the franchise, the General Council reserved for future determination. It will not be presumed that the General Council will adopt regulations or fixed rates without first having surveyed and considered all of the circumstances and elements necessary to a proper determination of the question. Any fear appellants might have had in this respect now should be entirely dispelled, since they are the ones charged with the duty of fixing fair and reasonable rates and adopting regulations which will burden neither the franchise holder, the users of the service, nor the public in general. In fact, the judgment complained of requires them to convene and adopt rates and regulations which are reasonable in all respects.

The last contention, to wit, the Common Council acted discreetly in its attempt to revoke the franchise contract is based on the assumption that it has the discretionary right to revoke. If it has no right to revoke, it cannot do so, discreetly or indiscreetly. A city has no right to revoke an otherwise binding contract unless that power has been granted it by the Constitution or the Legislature. Certainly, the Legislature has made no attempt to grant to any city such a right; which brings us, although it has not been relied on by appellants, to a consideration of Section 3 of our Constitution which reads: "All men, when they form a social compact, are equal; and no grant of exclusive, separate public emoluments or privileges shall be made to any man or set of men, except in consideration of public services; but no

property shall be exempt from taxation except as provided in this Constitution, and every grant of a franchise, privilege or exemption, shall remain subject to revocation, alteration or amendment.''

Although this question is one of first impression in this jurisdiction, we are not without precedent in its consideration. In its Constitutional Convention in the year 1901, the state of Alabama adopted constitutional provisions almost identical with Sections 3, 163, and 164, of our own. Indeed, they are so alike that they might well have been lifted from our Constitution and placed in that of the state of Alabama. At the time of the rendition of the opinion we hereinafter will refer to, the Legislature of Alabama had not granted to the cities of that state the right to revoke franchises, thus the statutory law of that state in this respect was identical with ours. The cities of Girard and Phenix City had granted to the Georgia Power Company a franchise for the operation of a street railway and electric light system for public use along and over the streets of each of the cities respectively. Later the two cities were consolidated and the Georgia Power Company sold and conveyed its electric system and franchise to the Alabama Power Company with approval of the Alabama Public Service Commission. Thereafter, a controversy arose between the Alabama Power Company and Phenix City concerning the former's right under the franchise and the city invoked the provisions of Sections 22, 220, and 228 which are almost identical with Sections 3, 163, and 164 of our Constitution—the only material difference being that under their Section 228 the existence of a franchise is limited to thirty years, whereas, in our Section 164, the limit is twenty years. The Supreme Court of Alabama, in an exhaustive opinion citing numerous decisions of various courts, held that Section 22 of the Alabama Constitution did not prohibit the Legislature from conferring on a city the right to grant a franchise without the power of such city to revoke it; and since the Legislature there, as here, had not given the city the right to revoke, the franchise was one from which, in the language of Mr. Justice Holmes of the U. S. Supreme Court, ''the city of its own motion may not recede.'' City of Opelika v. Opelika Sewer Co., 265 U. S. 215, 44 S.Ct. 517, 518, 68 L.Ed. 985; Phenix City v. Alabama Power Company, 239 Ala. 547, 195 So. 894. We are in accord with the reasoning and the

conclusion reached in that opinion; and since it is available to the reader in the cited publications, we will not labor this opinion with lengthy quotations therefrom nor attempt in our own words to convey the thoughts expressed therein.

Since the decision of the Chancellor conforms to the views expressed in the Alabama case we have referred to, and to those additional views herein expressed, the judgment will be affirmed.