CITY OF OWENSBORO, Kentucky, a Municipal corporation of the Second Class, et al., Appellants,

v.

TOP VISION CABLE COMPANY OF KENTUCKY, a Kentucky corporation, Appellee.

TOP VISION CABLE COMPANY OF KENTUCKY, a Kentucky corporation, Cross-Appellant,

v.

CITY OF OWENSBORO, Kentucky, a Municipal corporation of the Second Class, et al., Cross-Appellees.

Court of Appeals of Kentucky.

Sept. 22, 1972.

Rehearing Denied Dec. 15, 1972.

Hugh D. Moore, Gilliam & Moore, Owensboro, for appellants and cross-appellees.

Edgar A. Zingman, Jon L. Fleischaker, Wyatt, Grafton & Sloss, Louisville, Joseph H. McKinley, McKinley & Howard, Owensboro, Smith, Pepper, Shack & L'Heureux, Washington, D. C., for appellee and cross-appellant.

GARDNER, Commissioner.

The City of Owensboro advertised for bids for a franchise to provide the citizens with community antenna television service (CATV). Top Vision Cable Company of Kentucky was granted the franchise. Pertinent provisions of the franchise agreement were as follows:

The effective date was December 17, 1965, with the grantees' having the privilege of continuing for 15 years.

Top Vision was granted the right to use the public ways of the city necessary for proper installation and maintenance of the system and also the city granted Top Vision the right, insofar as it could, to use poles and equipment of other utility companies within the city.

Construction was to be completed within two years. If not completed within two years the franchise was to become null and void. The city, in its discretion, could "extend said two (2) year deadline from time to time upon written application for same by the second party * * *.

Top Vision was to provide coverage of all telecasts originating within a 40-airmile radius of Owensboro.

Top Vision was to pay the city a sum equal to 26 percent of the gross income from the business within the City of Owensboro.

If any provision of the franchise agreement was declared invalid, such declaration would not affect the remainder of the franchise.

Soon after the franchise was granted the Federal Communications Commission promulgated a rule prohibiting the importation of distant television signals into the top 100 television markets. Owensboro is located in one of the 100 largest markets, to wit, the Evansville, Indiana, market. Enforcement of the rule would prevent Top Vision from picking up television signals from Louisville, Nashville, Bowling Green and Paducah. While the franchise agreement required that Top Vision supply coverage of telecasts originating from transmitters located only within a 40-mile radius of Owensboro, it was alleged by Top Vision and seems to have been acknowledged by the city, as shown by subsequent events, that it was anticipated by both parties that a wider coverage would be supplied. Top vision alleged that the FCC rule was such a disappointment to prospective customers that many refused to accept Top Vision's service. This in turn, Top Vision claimed, made it more difficult to obtain capital to complete the work.

Before the initial two-year period expired Top Vision requested and was granted a 12-month extension of time (to December 20, 1968) in which to provide the service. The resolution authorizing the extension contained the provision, " * * * Whereas, the Board of Commissioners is aware of the matters now pending between the Top Vision Cable Company and the Federal Communications Commission and deem said request for an extension of time to be reasonable; * * *." Near the end of the extended period Top Vision requested and was granted another extension to December 20, 1970. The resolution recited, "Whereas, the Board of Commissioners deem the unforeseen stringent regulation of the Federal Communications Commission now in force and the proposed proceedings challenging them, sufficient cause for granting the written application of Top Vision Cable Company, Inc. for an extension of time within which to complete its system with the City, * * *."

Top Vision states that the city actively participated in trying to obtain a waiver of the FCC rule; that city officials wrote letters in behalf of Top Vision to the FCC and one of the city commissioners made a personal appearance before the FCC on May 21, 1969, in an effort to get a waiver of the ruling.

On March 26, 1970, in the consolidated cases of Wonderland Ventures, Inc. v. City of Sandusky, etc., 423 F.2d 548 (6th Cir.)

(1970), the Court of Appeals for the Sixth Circuit held that the ordinance there in issue (similar to that contained in the present franchise) imposed a gross-receipts tax on CATV systems and was unconstitutional as a burden on interstate commerce in violation of the commerce clause of the United States Constitution. In the wake of that decision, Top Vision requested that it and the city "renegotiate" the amount to be paid for the use of the public ways of the city. The city refused. Thereupon Top Vision instituted action in the federal court to have declared invalid the provision whereby it was to pay 26 percent of the gross receipts to the city. The city filed a pleading acknowledging the invalidity of the 26-percent provision and the suit was dismissed because no actual controversy existed. The order of dismissal was entered November 23, 1970.

On November 4, 1970, Top Vision made a written request to the city for the third extension. The request was denied by resolution dated November 6, 1970. The present action was instituted by Top Vision on December 19, 1970.

In its complaint Top Vision asked that it be declared that the city had no authority to require that local CATV operations be franchised by the city, and that it be declared that the city could not deny Top Vision the privilege of using the public right of ways upon payment of a reasonable fee. In the alternative Top Vision asked that it be declared that the 26-percent clause was severable and that the remainder of the franchise agreement be held valid with further declarations that Top Vision be required to pay only a reasonable sum for the use of the public ways, that Top Vision be given a reasonable time within which to complete the project, that the city refund the amounts paid under the 26-percent clause, and that the city be prohibited from advertising for the granting of another franchise during the pendency of the action.

The city's motion to dismiss the complaint was overruled. On the same day Top Vision moved for a summary judgment and on the same day the motion for summary judgment was sustained and judgment entered. The judgment made no mention of Top Vision's demand that it be declared that the city had no legislative authority to require CATV operations to be franchised. The judgment provided (1) that the 26-percent clause was severable and the remainder of the agreement was valid, (2) that the city and Top Vision renegotiate and arrive at a reasonable amount to be paid for the use of the public ways, (3) that the city grant Top Vision a reasonable time in which to complete the project, (4) that the city be enjoined from soliciting or considering bids or granting an exclusive franchise for a CATV operation within the city, and (5) that Top Vision not recover the fees paid under the invalid 26-percent clause.

In the city's motion to vacate the judgment one of the grounds was that the judgment was entered without the city's having filed an answer. It is noted that the city waived notice of motion for summary judgment. The judgment recites that the cause was submitted upon motion of the city to dismiss the complaint and upon motion of Top Vision for summary judgment. The judgment also recites that the court "considered the pleadings, exhibits, memoranda and argument of counsel." CR 12.02 provides that when upon motion to dismiss because the pleading fails to state a claim matters outside the pleading are presented, the motion shall be treated as one for summary judgment. It is obvious that the court and the parties treated the kindred motions together and that the efforts of the prospective parties relative to the motion to dismiss were also relied on in the motion for a summary judgment. It was not until after the summary judgment had been entered that the city raised the point that it had not filed its answer.

An anomolous situation is presented where *both* parties contend that the franchise agreement is invalid. The city argues that since the 26-percent clause is an integral and vital provision of the franchise, and since the federal court, in effect, held the clause unconstitutional, the franchise agreement is invalid in its entirety. Top Vision on the other hand contends that the invalidity arose because the city had no constitutional or statutory authority in the first place to require a CATV business to be franchised. Ordinarily where both parties argue that a contract is invalid the court would simply agree and enter an order to that effect. In the present instance, however, the reason for the invalidity would have an important effect on further proceedings. If the reason is as contended by the city, the city could readvertise for bids and grant a franchise to someone other than Top Vision. If Top Vision's contention is sound, then the furnishing of cable reception to the viewers would be on an open-market basis.

First we shall look at Top Vision's contention that the judgment was erroneous because it was predicated on the city's having authority to require a CATV business to be franchised. Section 163 of the Kentucky Constitution is as follows:

"No street railway, gas, water, steam heating, telephone, or electric light company, within a city or town, shall be permitted or authorized to construct its tracks, lay its pipes or mains, or erect its poles, posts or other apparatus along, over, under or across the streets, alleys or public grounds of a city or town, without the consent of the proper legislative bodies or boards of such city or town being first obtained; but when charters have been heretofore granted conferring such rights, and work has in good faith been begun thereunder, the provisions of this section shall not apply."

Section 164 of the Kentucky Constitution is as follows:

"No county, city, town, taxing district or other municipality shall be authorized or permitted to grant any franchise or privilege, or make any contract in reference thereto, for a term exceeding twenty years. Before granting such franchise or privilege for a term of years, such municipality shall first, after due advertisement, receive bids therefor publicly, and award the same to the highest and best bidder; but it shall have the right to reject any or all bids. This section shall not apply to a trunk railway."

KRS 96.050 reads in part as follows:

"Second-class city may regulate construction and operation of utilities—The legislative body of any city of the second class may, by ordinance:

(1) Direct and control the laying and *construction of railroad or street railway* tracks, bridges, turnouts and switches, poles, wires, apparatus and appliances in the streets and alleys of the city, and the location of depot ground within the city."

This court has ruled decisively that services other than those enumerated in section 163 of the Kentucky Constitution are subject to franchise. In the case of Ray v. City of Owensboro, Ky., 415 S.W.2d 77 (1967), the right of the city to require a franchise for the operation of ambulance service was attacked. We said:

"It will be noted that section 163 deals with certain specific subjects, to-wit, street railway, gas, water, steam heating, telephone or electric light companies within a city or town. We do not believe the right granted cities by this section is today limited to these specific utilities. The purpose of the section was to give the city control of the streets, alleys and public grounds and to make it possible for the city to provide the services of these utilities to its inhabitants. Therefore, the right granted is not and properly should not be restricted to those utilities enumerated, but applies to all

utilities and services which might today be proper subjects for control, when the original intent and purpose of the act is considered."

We have held the following projects to be subjects for franchise: Garbage collection, City of Bowling Green v. Davis, 313 Ky. 203, 230 S.W.2d 909 (1950); automobile-bus line operating over streets, People's Transit Co. v. Louisville Railway Co., 220 Ky. 728, 295 S.W. 1055 (1927); right to use a part of a river bed for the extraction of sand and gravel, Willis v. Boyd, 224 Ky. 732, 7 S.W.2d 216 (1928).

It cannot be denied that television is an integral part of American life. It possesses many of the attributes of a public utility. It is of a public nature. It is said in 36 Am.Jur.2d, Franchises, section 3, page 725:

> "Generally speaking, the right to carry on any business of a public nature, such as the establishment, construction, and operation of a public utility and the collection of tolls or charges for its use or service, or the use of highways for such purpose, is a franchise."

■ Of rather recent vintage is the cable system. It is rapidly gaining in popularity. It enables the viewer to see a clearer picture. Especially is it desirable where the originating signal is far away. Stringent regulations of CATV by the FCC have been upheld by the Supreme Court of the United States. See United States v. Mid-West Video Corp., 406 U.S. 649, 92 S.Ct. 1860, 32 L.Ed.2d 390 (decided June 7, 1972). We cannot accept Top Vision's argument that the city is not involved because the cables and wires will be placed on poles and strung over public ways where existing utility companies have the right to operate by other franchises. It is not shown, in the first place, that all cables and wires will be constructed and

used coincidentally with existing equipment of other utilities, and, in the second place, under its general obligation to provide its citizens with safe, clean and unobstructed public ways, the presence of television cables, even in connection with existing utilities, would be an added burden on the city. We are of the opinion that the right to operate a community antenna television service in a city is a subject for franchise. We are also of the opinion that a franchise is an agreement between the granting authority and the holder and partakes of the usual incidents of a contract. See City of Louisville v. Louisville Home Telephone Co., 149 Ky. 234, 148 S.W. 13 (1912); Prestonsburg Water Co. v. Dingus, 271 Ky. 240, 111 S.W.2d 661 (1937); City of Bowling Green v. Davis, 313 Ky. 203, 230 S.W.2d 909 (1950); and 36 Am.Jur.2d, Franchises, section 6, page 728.

■ The city further contends that the 26-percent clause cannot be severed from the remainder of the agreement without doing violence to one of the underlying purposes of the franchise, to-wit, to provide revenue to the city, and the elimination of the clause vitiated the contract. This contention, we believe, is sound. It is true that the primary purpose of a public utility, including cable television, is to make available adequate service to the customers (Louisville Home Telephone Co. v. City of Louisville, 130 Ky. 611, 113 S.W. 855 (1908)) but also of importance is the remuneration to be received by the public authority. Both parties entered into the contract in good faith. On the strength of the contract Top Vision says it expended some $430,000. The city expected to receive 26 percent of the gross receipts. Since Top Vision was unwilling to pay the amount it agreed to, when it was determined the 26-percent clause was invalid, then the city was within its rights in declining to extend the franchise.

We are of the opinion, and the city concedes, that Top Vision is entitled to re-

cover the equipment and materials it is using in connection with the project. The circuit court should determine and grant Top Vision a reasonable time to remove or sell the property.

Top Vision insists it is entitled to a refund of the amount paid to the city under the invalid 26-percent clause. The arguments of the respective sides have been well briefed. Top Vision argues that the rule in this jurisdiction is that money paid under a mistake of law may be recovered, citing Spalding v. City of Lebanon, 156 Ky. 37, 160 S.W. 751 (1913). The city counters by saying that since Top Vision has utilized the public ways it cannot recover the amounts paid for that privilege, citing Postal Telegraph Cable Co. v. City of Newport, 160 Ky. 244, 169 S.W. 700 (1914), and Bastin Telephone Co. v. Mount, 176 Ky. 26, 195 S.W. 112 (1917). Upon a remand of the case we believe the trial court should determine the question of remuneration to the city on the basis of what a reasonable fee would be for Top Vision's use of the city's public ways for the CATV service. If overpayment has been made then the excess should be refunded to Top Vision.

Since we have determined that the contract was invalid by virtue of the 26-percent clause we see no need to discuss another argument made by the city that Top Vision's failure to complete the project within the two years specified by the contract vitiated the contract nor Top Vision's counterargument that the city was estopped from insisting on the forfeiture.

Judgment is reversed and the case remanded for further proceedings consisting with this opinion.

STEINFELD, C. J., and HILL, MILLIKEN, OSBORNE, PALMORE, and REED, JJ., concur.

NEIKIRK, J., concurs in result only.