HOPKINSVILLE CABLE TV, INC., Plaintiff,

v.

PENNYROYAL CABLEVISION, INC., et al., Defendants.

Civ. A. No. 81–0270–P(G).

United States District Court, W.D. Kentucky, Paducah Division.

March 11, 1982.

Stites, McElwain & Fowler, J. Bissell Roberts, Louisville, Ky., George Shapiro, James P. Mercurio, Arent, Fox, Kintner, Plotkin & Hahn, Washington, D.C., for plaintiff.

Steven Underwood and John Chewning, Hopkinsville, Ky., for City of Hopkinsville & Deatherage.

Henry Watson, III, Municipal League, Lexington, Ky., for City of Hopkinsville.

Douglas Becker, Robert J. Beale, Cooper, Kiel & Beale, Louisville, Ky., for City of Hopkinsville, Mayor Al Rutland and Wendell Rorie.

Bert T. Combs, Sheryl G. Snyder, Wyatt, Tarrant & Combs, Louisville, Ky., for Baum, Henry, Klungness, Reynolds, Smith, Spangler, Sunderlands, Thomas, Weary, Pennyroyal, Deatherage, Fletcher, Futrell and Owens.

Morton J. Holbrook, Holbrook, Gary, Wible & Sullivan, PSC, Owensboro, Ky., for Pennyroyal Cablevision, Inc., Fletcher, Futrell, Owen and Deatherage.

Laurence J. Zielke, Pedley, Ross & Zielke, Louisville, Ky., for Pamela G. Miller, William P. Munday, William H. Nichols, Jr. and Ben S. Wood, III.

## MEMORANDUM OPINION AND ORDER

JAMES F. GORDON, Senior District Judge.

This action is the product of competition between two rival cable television corporations to obtain a non-exclusive franchise to provide cable television service to the citizens of Hopkinsville, Kentucky. On December 15, 1981, the Hopkinsville City Council voted to award a cable television franchise to defendant Pennyroyal Cablevision, Inc. (hereinafter, Pennyroyal), and deny the application of plaintiff Hopkinsville Cable TV, Inc. (hereinafter, Hopkinsville Cable) for such a franchise. The next day Hopkinsville Cable filed this suit naming Pennyroyal, individual stockholders of Pennyroyal, the City of Hopkinsville, the city's mayor, Al C. Rutland, and city attorney, Wendell Rorie, as defendants. The action is now before us on motions to dismiss filed by each of these defendants; however, since the record before us contains affidavits we treat the same as a motion for summary judgment under Rule 56.

Hopkinsville Cable's complaint alleges that various combinations of the defendants violated the federal anti-trust laws found in Section 1 and 2 of the Sherman Act, abridged freedom of speech and the press protected by the First and Fourteenth Amendments, and deprived Hopkinsville Cable of its property without due process of law in contravention of the Fourteenth Amendment. Hopkinsville Cable also attaches a pendent claim based on state contract law to these "federal question" allegations. After a close examination of the complaint and a review of the parties' memoranda, we believe that the anti-trust, free speech and press, and due process allegations fail to state a claim upon which relief

can be granted. This determination, of course, undermines our pendent, subject-matter jurisdiction to hear the claims based on state law. Accordingly, we grant all defendants summary judgment under Rule 56 and will order dismissal of the complaint at plaintiff's costs.

The relevant facts, as alleged in the complaint, can be summarized as follows. Hopkinsville Cable has been the sole provider of cable television service to Hopkinsville, Kentucky for the past fifteen years. Hopkinsville Cable had a license from the City of Hopkinsville (hereinafter, City) to provide this service. Hopkinsville Cable's license was not exclusive, but during this period no other cable television companies attempted to enter the Hopkinsville market. In the Summer of 1981, Hopkinsville Cable requested that the City grant it a franchise "in order to insure ... that it could continue operating in Hopkinsville". (Complaint, ¶ 34). In response to this request, the Hopkinsville City Council passed an ordinance authorizing the City to grant a "non-exclusive franchise for terms of 15 years to any person, firm or corporation for the establishment of a business as Community Antenna Television". (Complaint, ¶ 35).

On December 10, 1981, the City received proposals for cable television franchises from Hopkinsville Cable, Pennyroyal, and one other firm who is not a party to this litigation. In its proposal, Pennyroyal expressed that it had an "understanding that the City would award a franchise only to one bidder and that no other franchise for the establishment of operation of a community antenna television service would be granted by the City 'absent some compelling failure in performance'". (Complaint ¶ 39). The City Council considered the three franchise proposals at a meeting held on December 15, 1981. At this meeting, Hopkinsville Cable stated that it desired a franchise even if more than one franchise was awarded. Pennyroyal, however, informed the Council that "it would withdraw its application if more than one franchise was awarded". (Complaint ¶ 40). After it concluded its consideration of the three proposals before it, the City Council voted to award only Pennyroyal a franchise, it being the obvious high bidder. On December 16, 1981, Hopkinsville Cable filed its complaint initiating this action.

In its complaint, Hopkinsville Cable asserts that all of the named defendants violated federal anti-trust laws through their participation in City's award of a cable TV franchise to only Pennyroyal. Hopkinsville Cable maintains that City's award of the franchise to Pennyroyal, in light of Pennyroyal's "understanding" that no other franchise would be awarded "absent some compelling failure in performance", constitutes a refusal to deal with Hopkinsville Cable in violation of Section 1 of the Sherman Act, as well as a conspiracy to monopolize the cable television market in Hopkinsville in violation of Section 2 of the Sherman Act. The defendants, on the other hand, vigorously argue that Hopkinsville Cable's factual allegations create no anti-trust causes of action. We need not resolve this issue, however, because both the governmental and private defendants in this case are immune from antitrust liability for acts such as those described in Hopkinsville Cable's complaint.

■ The acts of the City and its agents in awarding a cable TV franchise to Pennyroyal fall within the "state action" exemption from Sherman Act liability created in *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). *Parker* established that the federal antitrust laws do not "restrain a state or its officers or agents from activities directed by its legislature," even though such activities would clearly subject a private entity to antitrust liability. *Parker, supra,* at 350–351, 63 S.Ct. at 313. The Sherman Act and other antitrust legislation does not expressly apply to the States, the Court reasoned, and "(i)n a dual system of government ... an unexpressed purpose to nullify a state's control over its officers and agents is not lightly to be attributed to Congress." *Parker, supra,* at 350–351, 63 S.Ct. at 313. Of course, the City of Hopkinsville is a municipality, not a state.

And, cities do not *ipso facto* fall within the scope of *Parker. City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 412–413, 98 S.Ct. 1123, 1136–37, 55 L.Ed.2d 364 (1978). Nevertheless, the alleged acts of the City in this case clearly fall within *Parker*'s protection.

The Supreme Court recently articulated the circumstances under which *Parker* applies to the actions of a city in controlling the construction and operation of cable television systems. In *Community Communications Co. v. Boulder,* 455 S.Ct. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982), the Court faced the claims of the City of Boulder, Colorado to immunity under *Parker,* from antitrust liability for its imposition of a temporary moritorium on cable television expansion. The Court noted that its precedents extend the *Parker* exemption to "municipal conduct. engaged in 'pursuit to state policy to displace competition with regulation or monopoly public service' ". *Boulder, supra,* at 51, 102 S.Ct. at 840, *quoting, City of Lafayette, supra,* 435 U.S. at 413, 98 S.Ct. at 1137. On the facts of *Boulder,* however, the Court found no "state policy to displace competition with regulation or monopoly public service". On the contrary, the State of Colorado's position concerning cable television franchises was one of "mere neutrality". *Boulder, supra,* 455 U.S. at 55, 102 S.Ct. at 843. Accordingly, the city's actions were not immuned from antitrust liability. The Court was careful to point out, however, that all municipal regulation of cable television was not subject to federal antitrust claims. Rather, a city must obey the antitrust laws only *"when the State itself has not directed or authorized an anticompetitive practice."* (Emphasis ours) *Accord, City of Lafayette, supra,* 435 U.S. at 416–417, 98 S.Ct. at 1138–39.

In the case at bar, the Commonwealth of Kentucky clearly directed and authorized City to take the actions which are the subject of Hopkinsville Cable's antitrust claims. Kentucky is not neutral concerning cable television franchises. Kentucky's highest appellate court has ruled that cable television systems fall within Section 163 of the Kentucky Constitution. *City of Owensboro v. Top Vision Cable Co.,* 487 S.W.2d 283, 287 (Ky.1972). Section 163 grants municipalities the authority and responsibility to control the entry of public utilities into the municipal marketplace by requiring such utilities to obtain a franchise before they can operate within a municipality. Thus, the Commonwealth of Kentucky grants City the same authority to create a monopoly for a provider of cable television as for a provider of electricity. Clearly, the actions of City, about which Hopkinsville Cable complains, were "municipal conduct engaged in 'pursuant to state policy to displace competition with regulation or monopoly public service' ". Therefore, *Parker* shields the actions of City and its agents, Rutland and Rorie, from antitrust liability. *See, New Motor Vehicle Board of California v. Orrin W. Fox Co.,* 439 U.S. 96, 109, 99 S.Ct. 403, 411–12, 58 L.Ed.2d 361 (1978); *California Retail Liquor Dealers Assn. v. Midcal Aluminum, Inc.,* 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980); *Metro Cable Co. v. CATV of Rockford, Inc.,* 516 F.2d 220, 228–229 (7th Cir.1975).

▪ Pennyroyal and its shareholders are similarly shielded from antitrust liability by the *Noerr-Pennington* doctrine. The *Noerr-Pennington* doctrine springs from two decisions of the United States Supreme Court, *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961) and *United Mineworkers of America v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965). These cases establish that the First Amendment right to petition the government prevents the Sherman Act or other antitrust law from applying to attempts by private individuals to obtain governmental action "that would produce a restraint or a monopoly." *Noerr, supra.* 365 U.S. at 136, 81 S.Ct. at 529. Construing the allegations of Hopkinsville Cable's complaint liberally, it asserts nothing more than that Pennyroyal sought to obtain a monopoly from City. This is precisely the type of conduct that *Noerr-Pennington* protects. *Metro Cable Co. v. CATV of Rockford, Inc.,* 516 F.2d 220, 228 (7th Cir.1975) (Cable TV

firm's attempts to persuade city officials to grant only it a cable TV franchise falls within *Noerr-Pennington* ).

■ Furthermore, *Noerr-Pennington* protects Mayor Rutland and City Attorney Rorie from antitrust liability for any alleged acts in support of Pennyroyal not protected by *Parker.* *Parker,* of course, only applies to actions which City authorized Rutland and Rorie to take on its behalf. To the extent, however, that Hopkinsville Cable's complaint alleges that Rutland and Rorie conspired with Pennyroyal to obtain favorable treatment for Pennyroyal from City, their conduct falls within the *Noerr-Pennington* immunity from antitrust violations. As the Seventh Circuit observed in *Metro Cable Co., supra,* at 230:

> "Plaintiff's position is in essence that an agreement to attempt to induce legislative action is a "conspiracy," and that if some of the "conspirators" persuade a member of the legislative body to agree to support their cause, he becomes a "co-conspirator" and a Sherman Act violation results. Such a rule would in practice abrogate the *Noerr* doctrine. It would be unlikely that any effort to influence legislative action could succeed unless one or more members of the legislative body became such "co-conspirators."

Thus, each defendant is immuned from antitrust liability for the acts alleged in Hopkinsville Cable's complaint, and accordingly the complaint's antitrust allegations fail to state a claim for relief against any of them.

■ Hopkinsville Cable also asserts, however, that City's failure to grant Hopkinsville Cable a franchise violates its First Amendment rights. Yet, City's alleged actions amount to nothing more than a refusal to permit Hopkinsville Cable to continue to use the public ways to operate its business. City's refusal to grant Hopkinsville Cable a franchise is not an attempt to influence the content of cable television available in Hopkinsville, but an attempt to control what businesses may string or lay cable through its streets. No one could doubt the propriety of such regulation. *Community Communications v. City of Boulder, Colo.,*

660 F.2d 1370, 1377–1378 (10th Cir.1981). Cable television may indeed be entitled to some First Amendment protections. But, "each medium of expression, of course, must be assessed for First Amendment purposes by standards suited to it." *Southeastern Promotions, Ltd. v. Conrad,* 420 U.S. 546, 557, 95 S.Ct. 1239, 1246, 43 L.Ed.2d 448 (1975). A Cable television system, by nature, tends to be a natural monopoly. *Lamb Enterprises, Inc. v. Toledo Blade Co.,* 461 F.2d 506 (6th Cir.1972). A city's conscious selection by competitive biddings of the cable television firm that will provide service to its community raises no First Amendment concerns as long as the city does not attempt to regulate the *content* of the successful firm's cable telecasts. *Cf. Community Communications Company, Inc. v. City of Boulder,* 630 F.2d 704, 709–714 (Markey, dissenting), (where the municipality attempts to control the content of the telecast the First Amendment is violated).

■ The final federal cause of action asserted in the Hopkinsville Cable complaint relies on the Fourteenth Amendment Due Process Clause. Hopkinsville Cable maintains that City's refusal to allow Hopkinsville Cable to continue to operate its cable TV business deprives Hopkinsville Cable of a vested property right without due process of law. Of course, the threshold question in assessing this claim is whether Hopkinsville Cable holds a property right under the facts as alleged in its complaint. *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972). The existence of a property right depends on state law. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Our examination of applicable Kentucky law convinces us that Hopkinsville Cable has no property right to continue providing cable service to Hopkinsville, Kentucky.

As is discussed above, Kentucky law requires cable television firms to obtain a franchise from the municipality that they intend to serve. *City of Owensboro v. Top Vision Cable Co. of Ky.,* 487 S.W.2d 283 (Ky.1972). Without such a franchise, a firm has no right to operate a cable TV system,

much less a vested property right to continue such operation. *See,* Section 163 of the Kentucky Constitution. Hopkinsville Cable has never held such a franchise. In the past, it operated on the basis of a license which had to be renewed annually. Thus, *Top Vision Cable Co.,* cited above, forecloses any argument that City's past authorization of Hopkinsville Cable's business creates a property right to continue its business in the future. Therefore, the allegations of the complaint that assert a violation of the Due Process Clause also fail to state a cause of action upon which relief can be granted.

The above discussion exhausts the plaintiff's causes of action that are grounded in the Constitution or laws of the United States. Upon close examination, not one of these federal claims appears to state a claim upon which relief can be granted. Accordingly, summary judgment is proper and the federal claims must be dismissed. The complaint also asserts a cause of action based on state contract law, in addition to the federal causes of action which we have considered. Since the "federal question" source of our subject-matter jurisdiction is undermined by our rulings on the plaintiff's federal claims, however, we have no pendent jurisdiction to consider the validity of the state contract claim. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1965). Accordingly, it will also be dismissed but without prejudice.

In summary, it is hereby ORDERED AND ADJUDGED that judgment be entered granting all defendants summary judgment as to all of plaintiff's claims, and the complaint of plaintiff, Hopkinsville Cable TV, Inc. be dismissed as to all defendants with prejudice, *except* those embodied in paragraphs 44, 45, 48, 49, 50, and 52 of the plaintiff's complaint, which assert causes of action based on state law and are therefore dismissed for lack of subject-matter jurisdiction without prejudice.