## CONSOLIDATED TELEVISION SERVICE, INC., Appellant,

### v.

### Joseph J. LEARY et al., Appellees.

Court of Appeals of Kentucky.

June 12, 1964.

Rehearing Denied Oct. 9, 1964.

William E. Johnson, Darnell, Johnson & Burton, Frankfort, for appellant.

Marion Rider, Frankfort, for appellee.

STEWART, Judge.

Appellant, Consolidated Television Service, Inc., is a privately owned corporation engaged in the business of furnishing co-axial cable television service for profit to the residents of Frankfort and to persons in certain outlying areas. Appellees are the members of the Electric and Water Plant Board of Frankfort, a public corporation owned and operated for the benefit of the

people of Frankfort. We shall refer to appellees as "the Board."

Appellant does not own any easements or utility poles. It uses poles owned by local utilities to string its wires for furnishing the cable service in question. Appellant began business about 12 years ago, initially confining its operation to East Frankfort. Meeting with success, it attempted to expand and sought the right to use the utility poles of the Board in all portions of Frankfort. This right had previously been granted to appellant's only competitor, Community Service, Inc., hereinafter called "Community." The Board refused general use of its poles but granted such a privilege in specified places, with the stipulation that appellant would not interfere with the operation of Community.

Appellant filed this action, asking for a mandatory injunction requiring the Board to permit it to use any and all poles owned by the Board in Frankfort and in the outlying areas where such are located. The Board then filed a motion for summary judgment supported by affidavits. After a hearing on the motion, the trial court sustained the motion. This appeal is from that ruling.

Appellant's contention is that the Board's action in refusing the use of its poles by appellant is arbitrary, discriminatory and unreasonable, since the Board permits its competitor to use the poles for the same purpose sought by appellant.

The record includes selected minutes of various meetings of the Board, detailing the inception of Community and the continuance of its relation to the Board. Two contracts with Community and a contract between the Board and appellant were filed herein. Certain affidavits were also made a part of the record. A summary of the pertinent facts taken from these writings follows.

When television began to be a popular form of entertainment in the late 1940's, Frankfort, due to its topography and geography, was at a serious disadvantage in the reception of programs of all types. In 1951, the Board, seeking to make available a facility that would bring in clear visual images accompanied by acceptable audio, obtained the services of Radio Corporation of America to accomplish this end. The latter, after two years of experiment and the expenditure of much time and money in Frankfort, perfected a method by which multiple signals could be received through a single high antenna and distributed to individual users by means of coaxial cable.

The Board, induced by additional potential revenue that might be derived therefrom, determined to avail itself of the plan. However, it deemed it impracticable to engage in the actual operation and, for the attainment of this purpose and in order to take care of the maintenance problem and the management details, caused to be created a self-perpetuating, nonprofit corporation, known as Community Service, Inc.

On August 11, 1952, the Board entered into a written contract with Community, with respect to the completion, extension and operation of the proposed television distribution service. The Board undertook to complete and extend, at its expense, the project, and Community assumed the obligation of the actual operation and of later extensions of the system. It was further provided Community out of its receipts should reimburse the Board for its investment; and that title to the facility, including any additions thereto made by Community, should be and remain at all times in the Board.

The initial agreement was for a period of one year, with the right to an automatic renewal of it from year to year and with the power to terminate it on the part of either party on written notice. On September 30, 1955, the Board entered into a new contract with Community for a period of ten years. In addition to the terms and conditions heretofore recited, the new contract provided that no person, officer, member or director of Community should receive any

dividends or profits from its operation, and that all sums realized, after deducting the necessary expenses and reserve for replacement, extension or alteration of the system, should be employed for charitable or religious purposes or for civic improvements in Frankfort or Franklin County.

On July 17, 1959, the Board executed a contract with appellant whereby the latter agreed to make television service available in certain specified areas in the city, not covered by Community, and the Board consented that it might use its poles in these sections for such purpose. This contract provided upon termination that "all equipment, wires and appliances on the poles used and useful in rendering such service shall revert to and become the property of the Board." Shortly thereafter this suit was filed.

Appellant claims the Board has acted in an unreasonable and arbitrary manner, relying upon this language from McQuillin, Municipal Corporations, Vol. 9, sec. 26.75, pp. 164–165, wherein it is stated:

"Municipal licensing authorities cannot unreasonably, arbitrarily or capriciously refuse a license or permit. * * * Nor can municipal authorities grant *licenses and privileges* to certain individuals and arbitrarily deny them to others, under like conditions." (Emphasis supplied.)

The facts in the case do not disclose that the Board has ever held itself out to the public, expressly or impliedly, as engaged in the business of making its poles generally available for use to any person who might organize a business to distribute television programs by means of coaxial cable. Such a method, it is shown, was promoted by the Board as a source of new revenue to be derived from the sale of electric current required to activate television sets. In short, the record is clear that the Board pioneered in making available in the Frankfort community television signals by coaxial cable, even before such a plan was thought

of by others; it was the first to put such a method in operation after it was proven to be feasible; and, having initiated the system and established it at considerable cost, it claims it must draw the line, as it cannot allow all others who may wish to engage in a similar enterprise to use its poles in an unlimited manner.

We have in this case a situation where permission is sought to continue an existing condition while a new one of the same type is asked to be forbidden. It has been held that the hardship of taking away an established use may well be regarded as greater than that of preventing a similar new use. That is to say, it is reasonably just to classify between existing use and proposed use of the same kind.

In the case of Hines v. Jenkins, 237 Ky. 676, 36 S.W.2d 387, the City of Bowling Green granted permits to place 51 gasoline pumps on its sidewalks. Jenkins and another person (not named) desired to install two gasoline pumps in front of their place of business to be connected with a tank or tanks beneath the sidewalk. A permit was applied for but refused because, previously thereto, the city had adopted a resolution to grant no further permits for such a purpose.

When sued, the city was perpetually enjoined from interfering with the installation of the gasoline pumps, the circuit court holding the city by refusing a permit was discriminating against Jenkins and the other person. Upon an appeal, this Court reversed, stating: "The city * * * cannot ordinarily make distinctions between different classes of its citizens, but not every classification is invalid. For example, classifications based upon time or existing conditions have frequently been upheld."

The recent case of Butler v. United Cerebral Palsy of Northern Ky., Inc., Ky., 352 S.W.2d 203, dealt with the question, among others, of determining if public assistance could be confined only to schools engaged in the education of exceptional children, at the time of the enactment of legislation making such assistance avail-

able, with the result that children who might attend other similar schools established thereafter would not be provided with the same benefit.

That opinion, after pointing out that classifications based upon their existing extent have been frequently upheld, determined it was not unreasonable to restrict public assistance "to existing schools already performing the type of service" under consideration in that case.

 Under the facts recited, and the principles of law applicable thereto, we believe the Board's refusal to grant appellant the right to use its poles did not necessarily result in unconstitutional discrimination.

Appellant contends the affidavit of O. R. Harrod, filed in support of the Board's motion for summary judgment, was inadmissible because it expressed interpretations and conclusions of the affiant and was not the best evidence. The affidavit detailed the reasons for the creation of Community and appellant asserts the trial court followed the conclusions stated in the affidavit in reaching its decision. Appellant maintains the minutes of the Board's meetings and the contracts between the parties, both of which were in the record, were the best evidence of the events about which O. R Harrod attempted to swear.

Whether or not the affidavit was admissible is of little importance here, as the facts contained in the affidavit were also in the other writings made a part of the record. How can it be said which was drawn upon by the trial court in the decision it made?

Appellant next asserts that, if Community is an arm or adjunct of the Board, then the action of the Board in supervising, maintaining and operating a television cable service exceeds the power and authority granted to the Board by statutes governing it. Thus appellant argues that the contract between the Board and Community is void. Appellant then says: "If said contract is void, or voidable, then there can be no valid

reason for the denial of the use of the poles. to appellant."

This is specious reasoning. Even if the contract with Community is void or voidable, the Board is under no duty to lease its poles to anyone. This Court has no power to compel it to allow anyone, even appellant, to use the poles. Since the question here is whether appellant can compel the Board to allow it to use the poles, there is no need to discuss the authority of the Board to contract with Community.

Wherefore, the judgment is affirmed.