**CITY OF NORTH OLMSTED, OHIO,
Plaintiff-Appellant,**

v.

**GREATER CLEVELAND REGIONAL
TRANSIT AUTHORITY,
Defendant-Appellee.**

No. 82–3135.

United States Court of Appeals,
Sixth Circuit.

Argued March 29, 1983.

Decided Dec. 2, 1983.

the Sherman Antitrust Act and the Ohio Constitution in attempting to monopolize public transportation in Cuyahoga County, Ohio. North Olmsted sought an injunction to prevent GCRTA from furnishing bus transportation inside its corporate limits, and requesting that GCRTA be directed to effectuate an agreement which would apportion to it a part of GCRTA's transportation subsidies. Appellee is charged with violating Section 2 of the Sherman Antitrust Act, 15 U.S.C. § 2, which provides:

> Every person who shall monopolize, or attempt to monopolize ... any part of the trade or commerce among the several States ... shall be deemed guilty ... [of unlawful conduct].

The Ohio constitutional provision relied upon by appellant is Article 18, Section 4 (the Home Rule Amendment), Ohio Const. art. 18, § 4, which provides:

> Any municipality may acquire, construct, own, lease, and operate within or without its corporate limits, any public utility the product or service of which is or is to be supplied to the municipality or its inhabitants, and may contract with others for any such product or service....

The district court properly found jurisdiction in this case. To understand the controversy, it is necessary to recite some background, most of which is uncontested.

North Olmsted is an Ohio municipality that has owned and operated a city bus line since 1931 within its territorial boundaries as provided for in the so-called Home Rule Amendment to the Ohio Constitution (Article 18, Section 4). In 1974, the Ohio Code was amended to provide for the creation, funding and operation of regional transit authorities as political subdivisions of the state. In 1974, under that statutory authority GCRTA was created by the City of Cleveland and Cuyahoga County, and began operating a bus line in Cuyahoga County, Ohio, composed of bus line assets transferred to GCRTA from the cities of Cleveland and Shaker Heights, Ohio. In 1975, North Olmsted and GCRTA entered into "operating agreements" whereby appellant agreed

Michael R. Gareau, James M. Dubelko, argued, North Olmsted, Ohio, for plaintiff-appellant.

Malcolm C. Douglas, argued, Edward J. Opett, Cleveland, Ohio, for defendant-appellee.

Before MERRITT, KENNEDY and WELLFORD, Circuit Judges.

WELLFORD, Circuit Judge.

This is an appeal from the grant of a summary judgment by the trial judge in this case in which the appellant, City of North Olmsted, Ohio, has sued the Greater Cleveland Regional Transit Authority (GCRTA), appellee, for alleged violations of

to provide municipal transit services and GCRTA agreed to assist by financial subsidy appellant's transit operations. Several extensions of the agreement were entered into which remained in effect until March 5, 1980. After negotiations, the parties could not reach agreement after that time about renewal of the contractual relationships, or about GCRTA's eventual acquisition of appellant's transit system.

Appellant first filed a declaratory judgment action against GCRTA in Ohio court under a variety of state law theories. The Ohio court found that the evidence did not show that GCRTA had threatened or attempted to coerce appellant; that GCRTA was under no duty, statutory or otherwise, to continue its relationship with North Olmsted; and that municipal corporations such as North Olmsted were not granted freedom from competition under the laws or constitution of Ohio. This trial court decision to deny North Olmsted any relief was affirmed by the Cuyahoga County Court of Appeals. North Olmsted's subsequent appeal to the Ohio Supreme Court was dismissed.

After the failure to obtain any relief in Ohio courts, appellant filed this suit in federal district court alleging that, among other things, in 1977, GCRTA implemented a plan to achieve a monopoly in bus transportation in Cuyahoga County in violation of Section 2 of the Sherman Antitrust Act. The district court granted summary judgment for GCRTA on this claim, holding that the activities of GCRTA were exempt from the scope of the federal antitrust laws under the "state action" doctrine. The rationale for this holding was that GCRTA was created for the express purpose of providing unified and dependable public transportation service within Cuyahoga County, and this enactment demonstrated that "the Ohio legislature was not ignorant of the possibility that a municipally owned transit system would either fail or be absorbed upon the formation of a regional transit authority . . . ." The trial court found that

GCRTA was acting under the authority of the Ohio legislature and that the legislature contemplated the conduct about which North Olmsted complained. Accordingly, GCRTA fell within the "state action" exemption to antitrust liability in respect to its challenged actions in this case.

When GCRTA was created, the cities of Shaker Heights, Euclid and Maple Heights, in addition to Cleveland and North Olmsted, owned and operated municipal transit systems. Cleveland and Shaker Heights in 1975 transferred their transit systems to GCRTA on the condition that Cuyahoga County voters approve a 1% sales tax levy for regional transit purposes. That condition was carried out by the Cuyahoga County voters, included among whom were those in North Olmsted. The "operating agreement" reached not long thereafter between the parties to this litigation provided that North Olmsted would provide municipal transit services inside its boundaries, and GCRTA would provide a full financial subsidy for these operations from the sales tax levy. That agreement also contained a proviso that it was "contemplated by the parties that [GCRTA] may eventually assume operation, ownership and control of [North Olmsted's] scheduled bus service." Euclid, Ohio, which had a similar such agreement, transferred its bus transit system to GCRTA in 1979.

The operating agreement was to expire in 1980, but during negotiations regarding a further extension, appellant filed its unsuccessful suit against GCRTA in state court.

The state court found in the declaratory judgment proceeding[1] that GCRTA had "fulfilled all of its contractual obligations under said operating agreement[s] to . . . North Olmsted," and that GCRTA had not threatened appellant with termination of the operating agreement "in order to wrongfully coerce [it] to enter into an agreement to transfer [its] municipally owned transit system[s]" to GCRTA. As a consequence of these, and other, findings

---

1. *Greater Cleveland Regional Transit Authority v. City of Maple Heights,* No. 999358 (Ohio C.P. Cuyahoga County, filed Oct. 15, 1980).

the Ohio trial judge concluded that GCRTA had the duty to provide countywide transportation service; that GCRTA, due to the expiration of the operating agreement, had "no continuing obligations" thereunder; that GCRTA had no duty to continue its relationship with appellant and that neither the Ohio laws nor constitution precluded GCRTA from "operating parallel transit service lines" through North Olmsted.

The judgment of the Court of Common Pleas was affirmed by the Ohio Court of Appeals,[2] which held that "[w]here a county creates a regional transit authority for the entire county the jurisdiction of said authority is the *entire* county." (emphasis added). The Court of Appeals further held that under Section 306.35(G)[3] of the Revised Code of Ohio, "the authority is authorized to operate transit facilities within" the municipality of North Olmsted and others within Cuyahoga County.

In its proceeding in the federal court, North Olmsted charged that GCRTA had "periodically engaged in sham negotiations" with respect to the proposed renewal of the operating agreements "with intent of forcing Plaintiff, and those other operators, to either sell their bus lines to the GCRTA," or to force North Olmsted and others out of business. The complaint recited GCRTA's absorption of other municipal bus lines in Cuyahoga County, and that GCRTA was engaging in these activities to obtain "a complete monopoly of bus service." North Olmsted also complained that GCRTA had purchased new buses for its operations, "but has refused to aid, assist or provide Plaintiff with any of these new buses. . . ." Further, it was charged that GCRTA's subsidies from the tax levy enabled it to exploit its position at North Olmsted's expense so that it could offer lower "anticompetitive fare rates."

GCRTA claims exemption from the claimed antitrust statutory violations under

the rationale of *Parker v. Brown,* 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) and the line of cases that set out a "state action" doctrine, which precludes enforcement of the Sherman Act to "official action directed by a state." *Parker* at 351, 63 S.Ct. at 313. It was specifically held in *Parker:*

> We find nothing in the language of the Sherman Act or in its history which suggests that its purpose was to restrain a state or its officers or agents from activities directed by its legislature.

317 U.S. at 350–51, 63 S.Ct. at 313.

This doctrine enunciated in *Parker* was held to exempt "anti-competitive conduct engaged in as *an act of government* by the state as sovereign, *or, by its subdivisions,* pursuant to state policy *to displace competition with* regulation or *monopoly public service* . . ." from Sherman Act control. *City of Lafayette v. Louisiana Power & Light Co.,* 435 U.S. 389, 413, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978) (emphasis added).

The *Lafayette* case involved the actions of a city, a political subdivision of the State of Louisiana, which were challenged by a private utility company as anti-competitive under the Sherman Act. The court plurality rejected the claim made by Lafayette of state action exemption, but stated, nonetheless:

> This does not mean, however, that a political subdivision necessarily must be able to point to a specific, detailed legislative authorization before it properly may assert a *Parker* defense to an antitrust suit. While a subordinate governmental unit's claim to *Parker* immunity is not as readily established as the same claim by a state government sued as such, we agree with the Court of Appeals that an adequate state mandate for anticompetitive activities of cities and other subordinate governmental units exists when it is found "from the authority given a gov-

---

2. *Greater Cleveland Regional Transit Authority v. City of Maple Heights,* No. 43419 (Ohio Ct. App. filed May 14, 1981).

3. A regional transit authority:
   "May acquire, construct, improve, extend, repair, lease, operate, maintain, or manage

transit facilities within or without its territorial boundaries, considered necessary to accomplish the purposes of its organization and make charges for the use of transit facilities." Ohio Rev.Code Ann. § 306.35(G) (Page Supp. 1982).

ernmental entity to operate in a particular area, that the legislature contemplated the kind of action complained of." 435 U.S. at 415, 98 S.Ct. at 1138 (footnote omitted).

■ That decision was later characterized as emphasizing "that the State as sovereign might sanction anticompetitive municipal activities and thereby immunize municipalities from antitrust liability." *Community Communications Co. v. Boulder,* 455 U.S. 40, 51, 102 S.Ct. 835, 840, 70 L.Ed.2d 810 (1982). The court in *Community Communications Co.* elaborated on the effect of the *Lafayette* decisions:

> This was simply a recognition that a State may frequently choose to effect its policies through the instrumentality of its cities and towns. It was stressed, however, that the "state policy" relied upon would have to be "clearly articulated and affirmatively expressed." This standard has since been adopted by a majority of the Court.

455 U.S. at 51, 102 S.Ct. at 840 (quoting *Lafayette,* 435 U.S. at 410, 98 S.Ct. at 1135). Based on the authoritative interpretation of the Ohio Regional Transportation Act given by the Ohio courts, we conclude that the actions of GCRTA alleged in North Olmsted's complaint were contemplated and authorized by state law and constituted state or state subdivision action in furtherance of "affirmatively expressed state policy." *Community Communications Co.,* 455 U.S. at 52, 102 S.Ct. at 841. *See City of Lafayette; and New Motor Vehicle Board of Calif. v. Orrin W. Fox Co.,* 439 U.S. 96, 109, 99 S.Ct. 403, 411, 58 L.Ed.2d 361 (1978). The alleged anti-competitive conduct of GCRTA was engaged in pursuant to a clearly articulated state policy expressed by legislative action creating regional, or county-wide, transportation authorities. The state action exemption, then, was correctly found to apply to GCRTA's alleged actions as a matter of law by the district court. Accordingly, North Olmsted is precluded from maintaining its antitrust cause of ac-

tion. See also the decision of this court in *Hybud Equipment Co. v. City of Akron,* 654 F.2d 1187, 1195 (6th Cir.1981).

■ The alleged failure by GCRTA to share with North Olmsted or to allocate Urban Mass Transportation Act funds to it is not in our view actionable under the Sherman Act. The decision of the Ohio court in the declaratory judgment suit filed by appellant clearly indicated that the Ohio policy in enacting the regional transit authority act did not require "equal distribution of potential benefits in the form of inventory subsidies." Although that decision related to a state sales tax levy, the reasoning is sound and applicable as well to the federal act. The federal act does not mandate such apportioning of subsidy funds in order to avoid the impact of the Sherman Act.[4]

■ We also affirm the judgment of Judge Manos on the Ohio constitutional claim because we agree that the North Olmsted action in that respect is barred by the principles of *res adjudicata.* "A judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same course of action." *Lawlor v. National Screen Service Corp.,* 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955).

The Ohio Appellate Court, in construing the applicable Ohio statutes and Article 18, Section 4 of the Ohio Constitution, specifically held that municipalities have *no* "exclusive right to conduct transit services within or without their corporate boundaries." This state court decision was a final adjudication on this Ohio pendant claim of North Olmsted seeking the federal court's order of preclusion against GCRTA operations within its boundaries. (Actually, of course, any such bus transit activity of GCRTA in North Olmsted would enhance rather than restrict competition.) Similarly, the decision of the Ohio appellate court that "the jurisdiction of the authority is the entire county," is a final adjudication on a

---

4. We would agree with the Ohio Appellate Court that "we find no federal statute or policy precluding competition between federally funded regional transit authorities and municipal transit lines."

further state claim of appellant. Furthermore, the Ohio appellate court held in the action previously filed by North Olmsted that under that state's constitution and laws "local and municipal interests must yield to the larger concerns of the State of Ohio." That rationale is determinative and settles finally as a matter of *res adjudicata* the claims of appellant in this proceeding.

For the reasons indicated, we AFFIRM the judgment of the district court in all respects.