857 F.2d 354
 1988-2 Trade Cases 68,239
 CONSOLIDATED TELEVISION CABLE SERVICE, INC., Plaintiff-Appellant,
v.
The CITY OF FRANKFORT, KENTUCKY; Electric and Water Plant
Board of the City of Frankfort, Kentucky; and
Community Service, Inc., Defendants-Appellees.
 No. 87-5539.
 United States Court of Appeals,
Sixth Circuit.
 Argued Feb. 23, 1988.
Decided Sept. 21, 1988.
 
 1
 Raymond G. Smith, argued, Louisville, Ky., Edward H. Stopher, for plaintiff-appellant.
 
 
 2
 Sheryl G. Snyder, argued, Wyatt, Tarrant and Combs, Louisville, Ky., Virginia H. Snell, William H. Hollander, Charles L. Hobson, argued, Frankfort, Ky., for defendants-appellees.
 
 
 3
 Before KRUPANSKY and WELLFORD, Circuit Judges, and GILMORE, District Judge.*
 
 
 4
 GILMORE, District Judge.
 
 
 5
 In this action, plaintiff Consolidated Television Cable Service, Inc. (Consolidated), a private for-profit corporation engaged in the business of providing cable television (CATV) service for the City of Frankfort, Kentucky, alleges that defendants, The City of Frankfort (City), Electric and Water Plant Board of the City of Frankfort, Kentucky, (Board), and Community Service, Inc. (Community), have violated the Federal Anti-Trust Laws and 42 U.S.C. Sec. 1983. The antitrust claim is essentially that defendants have unlawfully conspired to prevent free competition between Consolidated and Community, and have conspired to and have created an unlawful monopoly for the provision of CATV services. The Sec. 1983 claim alleges numerous civil rights violations, including denial of due process and infringement of First Amendment Rights.
 
 
 6
 Community is a nonprofit, nonstock corporation that also provides CATV service in Frankfort. In fact, since the early 1950's, Consolidated, or its predecessors, and Community have both serviced Frankfort. Since its inception, however, Community has had a special relationship with the City and the Board. Consolidated has long desired to be placed on an equal footing with Community.
 
 
 7
 This is actually the seventh lawsuit brought by Consolidated since 1960 in connection with the provision of CATV services in Frankfort, and the second time the dispute has been before this Court.[1]
 
 
 8
 The district court granted summary judgment for defendants, dismissing the action, and holding that: 1) Consolidated's claim under 42 U.S.C. Sec. 1983 is res judicata; 2) prior litigation estops Consolidated from arguing that Community is not an agency of the City and the Board, and the record reveals that Community is a de facto agency; and 3) defendants are immune from the antitrust claims under the state action exemption of Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943).
 
 
 9
 * The district court summarized the pertinent facts as follows:
 
 
 10
 When television became popular in the late 1940's, Frankfort, due to its topography and geography, was at a disadvantage in obtaining adequate reception of television broadcasts. In an effort to remedy Frankfort's inability to receive broadcasts on home antennae, the City and the Board consulted with Radio Corporation of America (RCA). RCA perfected a method by which multiple signals could be received through a single high antenna and distributed to homes by means of a coaxial cable. The Board created a non-profit, non-stock corporation, known as Community Service, Inc., to operate the new system that RCA had invented and which was owned by the City.
 
 
 11
 The Board and Community entered into a contract in August of 1952. This contract was to run for one year and permitted Community's use of the Board's existing equipment as well as any extensions the Board might need to build in order to supply television service. No consideration was given but the contract provided for Community to reimburse the Board for any costs expended in construction. The title to all units constructed was vested in the Board.
 
 
 12
 In September of 1955 a new contract was entered into between the Board and Community. This contract was to run for 10 years and permitted Community to operate the CATV system in the City. The entire televisiom system was leased to the corporation. The contract further provided that Community was to remain a non-profit corporation with all sums realized going to charity. The consideration for rental of the system was to be $1.00 per year.
 
 
 13
 By 1958 almost all the valley section of Frankfort was being served, except two fairly large areas in east and north Frankfort. Community had not extended this system to these areas for financial reasons. In 1958 plaintiff requested and in 1959 was granted a contract by the Board. This contract permitted Consolidated to construct a coaxial cable system for the unserviced areas of the city. It also permitted plaintiff to use city-owned utility poles in those areas.
 
 
 14
 By 1960 Consolidated had expanded as far as it could under its contract with the Board. It requested permission to extend its cable system into the same areas then being served by Community. The Board denied Consolidated's request to expand its pole attachments. As a consequence, plaintiff brought the first of the lawsuits which preceeded the present suit.
 
 
 15
 The contracts between plaintiff and defendant Board, and Community and Board, expired in 1965. Both parties were permitted to operate their cable systems in Frankfort without a contract for about 18 months. In 1967 Community was given a new contract but Consolidated was not. Community's new contract was for a period of five and one-half years and allowed Community to use all poles owned by the local telephone company and the plant board for $1.00 per year. One provision of this contract required Community to allow the Board chairman to nominate three members to Community's board of directors. In 1978, the defendant Board and Community entered into another contract which was to extend for 10 years the prior supplemental contract of March 1971.
 
 
 16
 In 1976, Consolidated again requested permission to expand its cable system. This time defendants refused to permit them to do so allegedly because plaintiff was suing defendants.
 
 
 17
 In 1982 Consolidated again requested permission to expand its pole attachments throughout the City of Frankfort. The defendants, City, Community, and Plant Board, again denied Consolidated's request. That denial led to the present suit.
 
 II
 
 18
 With reference to the Sec. 1983 claim, the district court held that it was barred by collateral estoppel, if not by res judicata. We affirm on grounds of res judicata rather than on grounds of collateral estoppel.
 
 
 19
 Consolidated has had only one contract with the Board, which lasted from 1959 to 1965, and which was never renewed or extended. That contract gave Consolidated the right to use poles owned by the Board to erect its CATV system to service only that portion of the City known as East Frankfort. In 1960, Consolidated wanted to expand farther, but its request for a contract to allow it to use poles in other areas of the City that were being serviced by Community was turned down. Consolidated then filed suit in state court alleging that, by allowing Community to use all of the Board's poles in the City and denying the same right to Consolidated, the Board had acted in an arbitrary, capricious, and discriminatory manner. Eventually, the Court of Appeals of Kentucky[2] affirmed the dismissal of the action by the trial court, stating in pertinent part:
 
 
 20
 Under the facts recited, and the principles of law applicable thereto, we believe the Board's refusal to grant appellant the right to use its poles did not necessarily result in unconstitutional discrimination ...
 
 
 21
 Consolidated Television Service, Inc. v. Leary, 382 S.W.2d 78, 81 (Ky.1964).
 
 
 22
 In 1971, an agreement was entered into by Community and the Board to allow Community to extend its operations into East Frankfort, where previously Consolidated had operated exclusively, and to use poles owned by the Board. This precipitated a suit in the United States District Court for the Eastern District of Kentucky by Consolidated against the Board, the City, and Community, alleging unconstitutional impairment of contract, and violation of the due process and equal protection clauses of the Fourteenth Amendment. The action sought injunctive relief.
 
 
 23
 The district court dismissed the complaint, and this Court affirmed, stating: "[W]e agree with Judge Moynahan that the City's operation of its own CATV system does not violate any rights of Consolidated protected by the Constitution of the United States." Consolidated Television Cable Service, Inc. v. City of Frankfort, 465 F.2d 1190, 1193 (6th Cir.1972).
 
 
 24
 In the present action, Consolidated alleges that defendants denied Consolidated access to telephone poles so as to prevent it from offering cable television service in Frankfort, in violation of 42 U.S.C. Sec. 1983, and the First, Fifth, and Fourteenth Amendments to the United States Constitution. The suit was filed in 1982, prompted by defendants' refusal to grant Consolidated's request for permission to expand its pole attachments throughout the City. According to Consolidated, a similar request had been rejected in the late 1970's on the grounds that defendants would not grant a contract to Consolidated in light of the ongoing litigation between the parties. Thus, Consolidated repeated its request in 1982, once all pending litigation was resolved.
 
 
 25
 The preclusive effect of a prior state court judgment is determined by looking to the law of that state. Kremer v. Chemical Construction Corp., 456 U.S. 461, 102 S.Ct. 1883, 72 L.Ed.2d 262 (1982). Similarly, the scope of a prior federal court judgment is governed by federal law. Cemer v. Marathon Oil Co., 583 F.2d 830 (6th Cir.1978). However, Kentucky courts and this Circuit define the doctrine of res judicata, also known as claim preclusion, essentially the same. Kentucky courts will find an action res judicata under the following circumstances:
 
 
 26
 First, there must be identity of parties. Second, there must be identity of the two causes of action. Third, the action must be decided upon its merits. In short, the rule of res adjudicata does not act as a bar if there are different issues or the questions of law presented are different. Likewise, it has long been recognized that a party may not split his cause of action, therefore, if a cause of action should have been presented and the party failed to do so and the matter should again arise in another action, it will be held that the first action was res adjudicata as to all causes that should have properly been presented ...
 
 
 27
 Newman v. Newman, 451 S.W.2d 417, 419 (Ky.1970). (emphasis added). Or, as this Court stated in Vinson v. Campbell County Fiscal Court, 820 F.2d 194, 197 (6th Cir.1987), under res judicata, "a final judgment on the merits bars further claims by the parties on the same cause of action ..." including "issues which could have been but were not litigated in the [prior] proceeding ..."
 
 
 28
 Here, Consolidated for the first time raises a First Amendment claim, and again raises its Fifth and Fourteenth Amendment claims, albeit in a slightly different form. These claims could have been raised in the prior litigation in the two suits mentioned above in Federal and state court. Consolidated claims that defendants' treatment of it, as compared to the treatment accorded to Community, violates its constitutional and civil rights. Consolidated's suit in state court in 1960 raised exactly the same issues as raised in this lawsuit, and even though the 1971 federal court action was prompted by defendants' encroachment on Consolidated's previously exclusive territory, the central issues were the same: Did defendants' methods of making CATV service available to Framkfort violate Consolidated's civil and constitutional rights? Both actions involve the same parties, the same evidence, and the same history as the present action. Therefore, Consolidated's Sec. 1983 claim is res judicata because it sets forth claims that were or could have been presented in prior litigation.
 
 
 29
 Consolidated's claim that it could not have brought its Sec. 1983 claims in the prior litigation because it was not until the Supreme Court's Monell[3] decision in 1978 that municipalities were amenable to suit under Sec. 1983 is unavailing. This Court addressed a similar argument in Harrington v. Vandalia-Butler Board of Education, 649 F.2d 434 (6th Cir.1981). In Harrington, this Court held that a prior Title VII employment discrimination action against a municipality was res judicata to subsequent action under 42 U.S.C. Sec. 1983, notwithstanding that the Sec. 1983 claim had been considered not viable against municipalities until the Supreme Court's Monell decision, which was rendered after the filing of the first action. Just as the Court observed in Harrington, "Section 1983 was not 'unavailable' to appellant" in 1960 and 1971; Consolidated "was free to challenge the validity of Monroe v. Pape [365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) ] to the extent that it exempted municipalities from the ambit of Sec. 1983 ..." Id. at 437.
 
 
 30
 The circumstances between the parties have not really changed over the past 35 years. Consolidated keeps asking for a contract to use the Board's poles and, except for the 1959-1965 contract, the Board has consistently rebuffed Consolidated. Two courts have looked at this matter, and have concluded there is no denial of constitutional rights. At some point, litigation must come to an end. Therefore, Judge Bertlesman's ruling that Consolidated's Sec. 1983 action is res judicata is affirmed.
 
 III
 
 31
 The district court next held that Community was a municipal agent, as opposed to a purely private actor, on three grounds: 1) collateral estoppel; 2) judicial estoppel based on the fact that Consolidated had actually argued in previous litigation that Community was an agent, and 3) that, as a matter of fact and law, Community is an agent, and cannot prove otherwise. This determination is critical to determining whether Community is entitled to state action immunity from the antitrust allegations. We agree with the district court that Community was a municipal agent, and not a purely private actor. We make this determination upon undisputed facts.
 
 
 32
 It is undisputed that the Board is a municipal corporation and that the Board, in the early 1950's, created Community. Since then, Community's form and method of operatiom has beem dictated by the City through the Board. It is true that the Board leaves "day-to-day" operations in the hands of those who run Community. But it is also a fact that Community exists at the pleasure of the Board, and the Board appoints one-half of Community's board of directors. In almost every lawsuit it has filed, Consolidated itself has admitted in its allegations that the contracts between the Board and Community recite that the Board "is the owner, and has ultimate control, of the television cable system." It is not for this Court to parse Kentucky state law to determine whether the Board and the City are permitted to provide for CATV service to citizens in Frankfort precisely in this manner. Kentucky law clearly authorizes municipal regulation of CATV services. Under the facts of this case, it is clear that the Board has ultimate control of Community, and that Community is a municipal agent and should be treated as such for purposes of the doctrine of state action immunity of the antitrust laws.[4]
 
 IV
 
 33
 The district court ruled that all three defendants are entitled to state action immunity from the antitrust allegations. We agree.
 
 
 34
 The state action immunity doctrine was established in 1943 in Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943). There, the Court upheld, against an antitrust challenge, a California law establishing a cartel of private raisin producers. The Court recognized the anticompetitive nature of the state's program, but found it outside the reach of the federal antitrust laws because:
 
 
 35
 The state in adopting and enforcing the prorate program made no contract or agreement and entered into no conspiracy in restraint of trade or to establish monopoly but, as sovereign, imposed the restraint as an act of government which the Sherman Act did not undertake to prohibit.
 
 
 36
 Id. at 352, 63 S.Ct. at 314.
 
 
 37
 In Town of Hallie v. City of Eau Claire, 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), the Court held that anticompetitive conduct by a municipality is protected by the state action exemption where the city's actions are authorized by state law even though the state does not compel or actively supervise the anticompetitive conduct, or expressly assert that the law is intended to have an anticompetitive effect. The municipality's actions need only be pursuant to a clearly articulated amd affirmatively expressed state policy. The Court said:
 
 
 38
 The determination that a municipality's activities constitute state action is not a purely formalistic inquiry; the State may not validate a municipality's anticompetitive conduct simply by declaring it to be lawful. On the other hand, in proving that a state policy to displace competition exists, the municipality need not "be able to point to a specific, detailed legislative authorization" in order to assert a successful Parker defense to an antitrust suit....
 
 
 39
 ....
 
 
 40
 It is therefore clear from our cases that before a municipality will be entitled to the protection of the state action exemption from the antitrust laws, it must demonstrate that it is engaging in the challenged activity pursuant to a clearly expressed state policy.
 
 
 41
 471 U.S. at 38-39, 105 S.Ct. at 1716-17 (citations omitted).
 
 
 42
 In Hallie, the Court found a sufficiently clear articulation of state authority for the City of Eau Claire to displace competition with local regulation in the language of the state's enabling legislation for local sewage systems. A group of unincorporated townships alleged that the City had violated the antitrust laws by monopolizing sewage treatment in the area, and by providing sewage treatment only to areas that were willing to be annexed by the city, and use its sewage collection services. However, the state legislation specifically allowed cities to refuse to provide sewer service to unincorporated areas. The Hallie court found the City immune under the Parker doctrine even though the statute did not expressly state that it authorized anticompetitive conduct since such conduct was a foreseeable result of giving the city power to refuse to serve unannexed areas.
 
 
 43
 Additional clarification of the doctrine has come from this Court in Riverview Investments, Inc. v. Ottawa Community Improvement Corp., 769 F.2d 324 (6th Cir.1985), modified 774 F.2d 162 (6th Cir.1985). The Court noted that the Supreme Court in Hallie, supra, and Southern Motor Carriers Rate Conference, Inc. v. United States, 471 U.S. 48, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985), had actually developed a two-prong test for state action immunity:
 
 
 44
 The first prong requires that the anti-competitive behavior derive from a clearly articulated state policy; the second prong requires active supervision of the anti-competitive behavior, but only when the actor is a private party rather than a municipality....
 
 
 45
 769 F.2d at 329 (emphasis in original). Of course, the second prong is not applicable in the instant case because we agree with the district court that, as a matter of law, all three defendants are municipal entities. See Section III, supra. In Riverview Investments, plaintiff challenged the denial of its application for industrial revenue bonds on antitrust grounds. This Court held that the statute granting cities authority to issue such bonds constituted clearly articulated state policy to displace competition, and, therefore, satisfied the first prong of the test "because decisions increasing or restricting competition, though not explicitly stated or recognized in the Ohio statute, are a logical and necessary outcome of the authority to grant industrial revenue bonds for the purpose of protecting jobs." Id.
 
 
 46
 In contrast, the state action exemption was found inapplicable in Community Communications Co., Inc. v. City of Boulder, Colorado, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982) where the Court held that the Colorado Constitution's Home Rule provision conferring general authority to govern local affairs on municipal governments did not constitute a sufficiently "clear articulation" of a state policy to authorize anticompetitive municipal conduct so as to immunize such conduct in connection with awarding of a cable TV franchise. The Court emphasized: [T]he requirement of 'clear articulation and affirmative expression' is not satisfied when the State's position is one of mere neutrality respecting the municipal actions challenged as anticompetitive...." Id. at 55, 102 S.Ct. at 843 (emphasis in original).
 
 
 47
 In this case, we find there exists under Kentucky law a "clearly articulated and affirmatively expressed" state policy to allow municipal regulation of the provision of CATV service, and, foreseeably, to displace competition. Unlike the mere Home Rule provision in Community Communications, supra, Kentucky law is not neutral, and clearly contemplates the type of anticompetitive conduct that is alleged in this case.
 
 
 48
 To begin with, Section 163 of the Kentucky Constitution requires public utilities to obtain a franchise, stating that a municipal utility must obtain "consent of the proper legislative bodies or boards of such city or town," before it may "construct its tracks, lay its pipes or mains, or erect its poles, posts or other apparatus along, over, under or across the streets, alleys or public grounds of a city or town...." Section 164 of the state Constitution further authorizes municipalities to grant franchises. Pursuant to these constitutional provisions, the Kentucky legislature has enacted KRS 96.010, which further specifies the manner of granting public utility franchises, and provides in subsection (2) that "if ... the city owns or desires to own and operate a municipal plant to render the required service, this section shall not apply."
 
 
 49
 Although these constitutional and statutory provisions do not explicitly refer to CATV services, the highest court of Kentucky has interpreted them to cover services other than "railway, gas, water, steam heating, telephone, or electric light," Sec. 163, supra, including CATV services. In Ray v. City of Owensboro, 415 S.W.2d 77, 79 (Ky.1967), the court held these provisions "should not be restricted to those utilities enumerated, but applies to all utilities and services which might today be proper subjects for control, when the original intent and purpose of the act is considered...." Thus, in Ray, the court held the city had authority under the state constitution to prohibit operation of an ambulance service without first obtaining a franchise. And soon after Ray, the same court held that, pursuant to these provisions of the Kentucky constitution "the right to operate a community antenna television service [cable TV] in a city is a subject for franchise...." City of Owensboro v. Top Vision Cable Co., 487 S.W.2d 283, 287 (Ky.1972), cert denied, 411 U.S. 948, 93 S.Ct. 1926, 36 L.Ed.2d 410 (1973).
 
 
 50
 This Court has previously relied on the interpretation of state law by the courts of that state in concluding that a defendant is entitled to state action immunity from antitrust allegations. In City of North Olmsted v. Greater Cleveland Regional Transit Authority, 722 F.2d 1284 (6th Cir.1983), cert. denied, 467 U.S. 1205, 104 S.Ct. 2387, 81 L.Ed.2d 345 (1984), this Court held that the alleged monopolization of municipal bus lines by a regional transit authority was protected under the Parker doctrine, stating:
 
 
 51
 Based on the authoritative interpretation of the Ohio Regional Transportation Act given by the Ohio courts, we conclude that the actions of GCRTA [the regiomal transit authority] alleged in North Olmsted's complaint were contemplated and authorized by state law and constituted state or state subdivision action in furtherance of "affirmatively expressed state policy."
 
 
 52
 Id. at 1288. Moreover, displacement of competition in the provision of CATV service--and many other services other than those specifically enumerated in the constitutional provisions--is a foreseeable result of granting the city power to franchise public utilities or own and operate a municipal plant. See Hallie, supra; Riverview Investments, supra.
 
 
 53
 We conclude that defendants' actions in providing CATV service for the residents of Frankfort primarily through Community, although obviously having an anticompetitive effect to the detriment of Consolidated and others, are pursuant to "clearly articulated and affirmatively expressed" Kentucky state law. Therefore, we affirm the district court's ruling that defendants are entitled to state action immunity from antitrust allegations under Parker.[5]
 
 
 54
 We reject Consolidated's argument that defendants are not entitled to state action immunity because they are not acting pursuant to state law in that they are not following the letter of the law by issuing a franchise.
 
 
 55
 This argument is unavailing. First, under KRS 96.010(2), supra, the Kentucky legislature has dispensed with the need to issue a franchise "if ... the city owns or desires to own and operate a municipal plant to render the required service...." Secondly, the argument overlooks the rationale for the state action exemption doctrine. Instead of denying state action immunity on grounds that the state legislature did not contemplate wrongful conduct, the better view is that anticompetitive conduct is immune so long as it is "a reasonable and foreseeable exercise of delegated powers." Hybud Equipment Corp. v. City of Akron, Ohio, 742 F.2d 949, 960 (6th Cir.1984), cert. denied, 471 U.S. 1004, 105 S.Ct. 1866, 85 L.Ed.2d 160 (1985).
 
 
 56
 The heart of the Parker doctrine is federalism--a desire to allow states as separate sovereigns to proceed unfettered by federal laws restricting their actions when they act within their proper sphere. As the Supreme Court observed in Hoover v. Ronwin, 466 U.S. 558, 574, 104 S.Ct. 1989, 1998, 80 L.Ed.2d 590 (1984), "The court did not suggest in Parker, nor has it suggested since, that a state action is exempt from antitrust liability only if the sovereign acted wisely after full disclosure from its subordinate officers...."
 
 
 57
 The Ninth Circuit has twice rejected the argument that state action immunity should be denied because defendants' action represented a misapplication of state law. Llewellyn v. Crothers, 765 F.2d 769 (9th Cir.1985); Boone v. Redevelopment Agency of City of San Jose, 841 F.2d 886 (9th Cir.1988). The court said in Llewellyn: " 'Ordinary errors or abuses in the administration of powers conferred by the state should be left for state tribunals to control.' A contrary rule would tempt aggrieved parties to forego available state corrective processes in the hopes of obtaining the treble damages remedy conferred by the Sherman Act ..."
 
 
 58
 The foundation for immunity is federalism, and the sovereignty of state action must be respected without reference to the subjective motivations of persons implementing the state's policy. Any other analysis would unacceptably erode the state action doctrine, since plaintiff would only need to present a claim of bad faith to escape the doctrine. As one eminent commentator has observed:
 
 
 59
 State laws intended to displace the antitrust laws may delegate to public agencies or officials the power to act, decide, or regulate in order to achieve anticompetitive results. Of course, state law "authorizes" only agency decisions that are substantively and procedurally correct. Errors of fact, law or judgment by the agency are not "authorized," and state tribunals will normally reverse erroneous acts or decisions. If the antitrust court demands unqualified "authority" in this sense, it will inevitably become the standard reviewer of governmental agencies whenever it is alleged that the agency, though possessing the power to engage in the challenged conduct, has exercised its power erroneously.
 
 
 60
 Areeda, Antitrust Immunity for "State Action" after Lafayette, 95 Har.L.Rev. 435, 449-50 (1981).
 
 
 61
 As this Court has already indicated, whether the state authorizes provision of CATV service precisely as the arrangement among defendants contemplates is better left to the determination of state courts. Consolidated Television Cable Service, Inc. v. City of Frankfort, 465 F.2d 1190 (6th Cir.1972). Moreover, we conclude here that, under state constitutional and statutory provisions, defendants' manner of providing CATV services to the residents of Frankfort is reasonably foreseeable. Therefore, defendants are entitled to state action immunity from the antitrust allegations.
 
 
 62
 For the foregoing reasons, we affirm the district court's grant of summary judgment in favor of all three defendants.
 
 
 63
 WELLFORD, Circuit Judge, concurring.
 
 
 64
 The prior decision of this court authored by Chief Judge Harry Phillips, held, in effect, that the City of Frankfort, through its agent, Community, was operating a CATV system in that city, and held:
 
 
 65
 This suit was filed by Consolidated to challenge the expansion of the City-owned CATV system, contending that the acts of the City and its agencies impair obligations of contract and deny Consolidated due process of law as guaranteed by the Fourteenth Amendment.
 
 
 66
 * * *The City and its agencies are shown to be doing nothing more than to use City-owned utility poles for the extension of the CATV services provided by the City in areas presently served by Consolidated. The record shows that it has been the policy of the City and its agencies to provide CATV service to an ever increasing number of areas in the City of Frankfort, beginning with those areas where, because of topography, the need for cable television was most urgent.
 
 
 67
 Consolidated Television Cable Service, Inc. v. City of Frankfort, Ky., et al., 465 F.2d 1190, 1192 (6th Cir.1972) (emphasis added).
 
 
 68
 The suit in that case by Consolidated did not take issue with the fact that, in effect, it was the City of Frankfort, through its agency, Community, that operated the CATV system competing with Consolidated. Constitutional challenges were raised in the earlier case to the actions of the City through extension of CATV services into the area previously served exclusively by Consolidated. I concur, therefore, with the holding that principles of res adjudicata bar this action by Consolidated. (I admit some difficulty, however, with the holding in Norrell v. Electric and Water Plant Board, 557 S.W.2d 900 (Ky.App.1977) that plaintiffs were similarly barred from challenging the City's authority to operate a CATV system under Kentucky law.)
 
 
 69
 I also concur with Judge Gilmore's decision that the district court was not in error on this record that Community was, in fact, an agent of the City of Frankfort for purposes of considering the Parker v. Brown, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943) state action immunity doctrine. I further agree that Kentucky law permits regulation of CATV service, and permits the municipality to subject CATV operations to a franchise arrangement. City of Owensboro v. Top Vision Cable Co., 487 S.W.2d 283 (Ky.1972), cert. denied, 411 U.S. 948, 93 S.Ct. 1926, 36 L.Ed.2d 410 (1973). I am not sure, however, that there is clearcut Kentucky law that deals with municipal supervision over, or ownership of, CATV operations, that is "clearly articulated and affirmatively expressed" within the meaning of Parker. There is authority from a United States district court in Kentucky that awarding an exclusive franchise to a CATV operator falls within the " 'state action' exemption ... created in Parker v. Brown." Hopkinsville Cable TV, Inc. v. Pennyroyal Cablevision, Inc., 562 F.Supp. 543, 545 (W.D.Ky.1982).
 
 
 70
 The City of Frankfort has doubtless, for whatever reasons, seen fit to make Consolidated's position in that city very difficult. Consolidated has rigorously pursued legal claims in state and federal courts to seek to indicate its asserted rights. While I concur in the result reached in this case, I find the issues unclear and I fail to find authoritive Kentucky state decisions that confirm the right of municipal ownership and/or operation of a CATV system in Kentucky. See Consolidated Television Service, Inc. v. Leary, 382 S.W.2d 78 (Ky.1964).
 
 
 
 *
 The Honorable Horace W. Gilmore, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 See Consolidated Television Cable Service, Inc. v. City of Frankfort, 465 F.2d 1190, 1193 (6th Cir.1972)
 
 
 [2]
 At that time, the Court of Appeals was then the highest appellate court in Kentucky
 
 
 [3]
 Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)
 
 
 [4]
 There is also support for applying the doctrine of judicial estoppel, which holds that, "a party who has successfully and unequivocally asserted a position in a prior proceeding ... is estopped from asserting an inconsistent position in a subsequent proceeding ..." Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir.1982). "The requirement that the position be successfully asserted means that the party must have been successful in getting the first court to accept the position ..." Id. at 599. But, "[a] party need not finally prevail on the merits in the first proceeding. Rather, judicial acceptance means only that the first court has adopted the position urged by the party, either as a preliminary matter or as part of a final disposition." Id. at n. 5
 In its 1971 federal court complaint, Consolidated affirmatively alleged: "Community Service, Incorporated ... since March 25, 1967, has been under the control of the Plant Board and now is an agency of that Plant Board ..." (App. 356).
 This Court took special note of that allegation in its 1972 opinion, observing, "It seems to be undisputed that the actions of Community referred to in this opinion, in substance and practical effect, are the acts of the municipal corporation, the City of Frankfort." 465 F.2d 1190, n. 2. The allegation was necessarily accepted by this Court before reaching the merits of Consolidated's claims of constitutional violation by Community, together with the City and the Board, just as it is necessary to allege state action for a Section 1983 action.
 Furthermore, in Norrell v. Electric & Water Plant Board, 557 S.W.2d 900 (Ky.App.1977), the state court affirmed judgment for these same defendants in an action alleging that the City and the Board lacked authority to own and operate a CATV system. The Norrell court concluded that plaintiffs were judicially estopped from asserting this claim in light of their allegation in federal court that "the City does have the power to run a CATV system itself as a part of its electrical plant facility, "and their contradictory, but often changing, allegations in state court. The Norrell court felt that plaintiffs were amending their allegations on this crucial issue to suit their current litigational aim and should no longer be permitted to "play fast and loose with the courts." This prior ruling of the state court that judicial estoppel precludes raising the issue of the legal status of Community as a municipal agent provides the basis for ruling, as did the district court, that Consolidated is collaterally estopped from raising that issue in this lawsuit.
 
 
 [5]
 For similar holdings, see Hopkinsville Cable TV, Inc. v. Pennyroyal Cablevision, Inc., 562 F.Supp. 543 (W.D.Ky.1982) (interpreting Kentucky law); City Communications, Inc. v. City of Detroit, 650 F.Supp. 1570 (E.D.Mich.1987) (interpreting Michigan law)